Willie MANN, Jr., Plaintiff-Appellant,

v.

HIGHLAND INSURANCE COMPANY,
Defendant-Appellee.

No. 72–1007.

United States Court of Appeals,
Fifth Circuit.

June 6, 1972.

Donald Feldman, Feldman & Abramson, P. A., Miami, Fla., for plaintiff-appellant.

William R. Eckhardt, III, Houston Tex., W. L. Adams, Miami, Fla., Vinson, Elkins, Searls & Smith, Houston, Tex., Wicker, Smith Pyszka, Blomqvist & Davant, Miami, Fla., for defendant-appellee.

Arthur Roth, Ehrich & Zuckerman, Robert W. Rust, U. S. Atty., Miami, Fla., Laurence F. Ledebur and Thomas L. Jones, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Stephens, Magill & Thornton, and Ralph & Boyd, and Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., for other interested parties.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

PER CURIAM:

The judgment is affirmed on the opinion of the trial court. As that opinion is not published, we attach it hereto as an appendix.

APPENDIX

ORDER GRANTING SUMMARY JUDGMENT

(Style Omitted)

This cause is before the Court on the motions of plaintiff, Willie Mann, Jr. and defendant, Highlands Insurance Company for summary judgment. The Court heard argument by counsel and considered the record in the cause. The facts are not in dispute.

Plaintiff seeks damages for injuries sustained because of the failure of

Highlands Insurance Company to discharge an alleged tort and contractual duty to make safety inspections of the job site where plaintiff worked and was injured. At the time of the injury, plaintiff's employer, Cross Contracting Company, was the named insured in a standard workmen's compensation and employer's liability policy issued by Highlands.

Cross was a sub-contractor on a job which involved construction of a portion of a flood control levee. The prime contract had been made between the United States Army Corps of Engineers and Ronlee, Inc. Ronlee had entered into a sub-contract with E. & I. Inc., which company, in turn, had entered into a contract with Cross under which Cross performed the work called for by the original contract.

Prior to beginning performance of the work, Cross secured the federal government's approval of a safety plan. Highlands did not participate in setting up this safety program and the plan did not call for safety inspections by the insurance carrier of Cross. In addition, the work on the job was done under the direct supervision of an inspector of the United States Corp of Engineers.

Highlands' policy provided coverage under both the Florida Workmen's Compensation Act and the Federal Longshoremen's and Harbor Workers' Compensation Act. The policy was written in Texas using the standard form approved for use in Florida, and was written at the regularly published Florida rates for the classifications of operations performed by Cross.

There was no provision in the standard form contract requiring Highlands to undertake inspection and safety engineering services for Cross. Rather the policy provided in part as follows:

### "INSPECTION AND AUDIT:

"The Company and any rating authority having jurisdiction by law *shall each be permitted* to inspect the work places, machinery and equipment covered by this policy and to examine and audit the insured's books, vouchers, contracts, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance." (Emphasis added.)

There was no separate contract between Cross and Highlands whereby Highlands was to undertake inspection and safety engineering services and Cross did not rely on Highlands to undertake safety inspections.

The only contact by Highlands' Safety Department employees with Cross prior to the accident was an initial inspection at the company's office at New Iberia, Louisiana. At this time Cross already had the government approved safety plan and the work was being done under the direct supervision of a government inspector.

No inspection was ever made by Highlands at the job location.

■ Plaintiff contends that Highlands had a contractual and tort duty to inspect the job site because in Florida insurance carriers have been allowed to have their premium rates include an allowance for safety and inspection engineering. During the time relevant to this action Highland's premium rates included an allowance of 2.16% of the net annual premiums for safety and inspection engineering. Plaintiff concludes that an insurance company that collects a percentage of its premium dollar, by and through the auspices of the regulations of the state insurance commission, for safety inspection and engineering and fails to make safety inspections of the various job sites cannot escape the consequences of such action. Defendant contends that Highlands had no duty to make safety inspections. Defendant is correct.

■ Plaintiff has not cited any statute or regulation that requires an insurer to make on the job inspections.

Plaintiff only presents statements made by insurance commissioners at rate hearings. Such statements do not have the force and effect of statutes or administrative regulations. Even if such statements were afforded the status of a statute or a regulation, there is nothing to show that they would require *any* on the job inspections, much less inspections of every job. That is to say, the most that they would require is that a certain percent of the premium dollar be spent on safety inspection and engineering. Thus such duty, if it existed, could be discharged by the spending of the required amount on any safety inspection and engineering measure, such as money spent for the holding of safety conferences or the distribution of safety literature.

Plaintiff does not present any authority that supports his negligence theory. The cases cited by plaintiff, notably Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964) and Hill v. United States Fidelity & Guaranty Co., 428 F.2d 112 (5th Cir. 1970) are based on a gratuitous undertaking to inspect assumed by the insurance companies in those cases. In the case at bar there was no undertaking to inspect, therefore the holdings in the *Nelson* and *Hill* cases regarding the proper discharge of a duty gratuitously undertaken are not relevant.

Plaintiff's contract theory likewise fails. It is undisputed that the express terms of the contract did not place any duty on Highlands to inspect the job. The statements made at the rate hearing do not support an inference that the parties intended for Highlands to inspect every job because the language of the contract *permitting* inspection by Highlands evidences an intent or agreement between Cross and Highlands that

there was no duty to inspect and because it does not appear that the 2.16% premium rate allowance for safety and inspection was sufficiently large to support the cost of such inspections.

Certainly it cannot be the law, nor could it have been within the contemplation of Highlands, Cross or the insurance commissioners that made the statements upon which plaintiff relies, that every insurance carrier providing workmen's compensation insurance in Florida must make safety inspections on every job site covered by such insurance merely because the insurance carriers were allowed to have their premium rates include a 2.16% allowance for safety and inspection engineering.

Further, the Highlands' policy was a standard form policy and as such it was approved by the Florida Insurance Commissioner. Therefore, if plaintiff's contention were correct, the policy would have stated that Highlands *must* inspect rather than merely stating that Highlands was permitted to inspect.

For the foregoing reasons Highlands Insurance Company had neither a contractual duty nor a duty that could give rise to recovery in tort to make safety inspections of the job site where plaintiff worked and was injured.

Therefore, it is

Ordered and adjudged that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion for summary judgment is granted.

Done and ordered at Miami, Southern District of Florida this 27 day of October, 1971.

/s/ Joe Eaton

United States District Judge