**Lester STACY, Plaintiff-Appellee,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.**

**No. 72–3268.**

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1973.

Rehearing and Rehearing En Banc Denied Nov. 8, 1973.

See also, D.C., 334 F.Supp. 1216.

W. P. Mitchell, Jess B. Rogers, Tupelo, Miss., for defendant-appellant.

William S. Lawson, John L. Long, Tupelo, Miss., for plaintiff-appellee.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Lester Stacy lost his right leg when he fell into a rotating auger in the floor of the ice storage room of the poultry processing plant where he was employed. Having received the statutory benefits provided under the Mississippi Workmen's Compensation Law,[1] Stacy brought this action against the Aetna Casualty and Surety Company, his employer's compensation insurance carrier. He alleged that Aetna's failure to use reasonable care in performing inspections and safety engineering services was a proximate cause of his injury which rendered the carrier directly liable to him for damages in excess of compensation benefits. Aetna moved for summary judgment on the ground that as workmen's compensation carrier for Stacy's employer, Purnell's Pride, Inc., it was immune from this suit for plenary damages because of the exclusive liability provisions of the Mississippi Workmen's Compensation Law, Miss.Code Ann. § 6998–05. Aetna's motion for summary judgment was denied with an opinion reported at 334 F.Supp. 1216 (N.D.Miss.1971).

The case was tried to a jury which found by answers to special interrogatories that Aetna did not exercise reasonable care when it failed to inspect the ice storage room of Purnell's poultry processing plant and that its negligence proximately caused or contributed to Stacy's injury. On appeal, Aetna contends, *inter alia*,[2] (1) that the district court erred in holding that under Mississippi law a workmen's compensation carrier may be subject to actions at law arising from negligent performance of inspection and safety engineering services and (2) that its motion for a directed verdict should have been granted since the evidence was insufficient to warrant submission of the case to the jury on the issue of liability. We do not reach or decide the correctness of the district court's *Erie*[3] interpretation of the exclusive liability provision of the Mississippi Compensation Law since we agree with Aetna that the evidence, when viewed in the light most favorable to Stacy, failed to establish a cause of action.

On the morning of the accident Stacy arrived at Purnell's plant prior to his fellow workers. Having turned on the ice conveyer system, he entered the ice storage room for the purpose of breaking up crushed ice which had frozen into a solid mass overnight so that it would feed into a trench in the center of the storage room from which a metal auger would convey it to the assembly line on an upper level. The floor of the ice storage room sloped toward this central trench at an angle of 7 to 10 degrees. Stacy slipped on a sheet of ice and slid into the trench where the rotating auger entrapped his right leg and slowly and

---

1. Miss.Code Ann. § 6998–01 to § 6998–59 (1952).

2. Aetna also contends that it was entitled to a directed verdict because the proof showed that as a matter of law the plaintiff had assumed the risk of his own injury and that the procedure followed by the court in reassembling the jury to inquire into their understanding of the special interrogatory concerning damages was improper. Because of our disposition of the case, we do not reach these issues.

3. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

painfully amputated it above the knee. At the time of Stacy's accident, there were no grates or grills covering the trench to prevent workmen from coming into contact with the auger, nor had any other accident-prevention or safety devices been installed for the protection of employees such as Stacy who would be required to work in the ice storage room.

For about two years preceding Stacy's accident, Purnell's operated its own company safety program covering all of the various installations making up its complete operation—the poultry processing plant, feed mill, vehicle maintenance shop, hatchery, commercial egg operation and warehousing facilities. During this time and prior thereto Aetna had provided workmen's compensation liability insurance to Purnell's. Under its policy, Aetna reserved the right to inspect all of the premises it insured. For at least two years before Stacy was hurt, an Aetna representative who was a trained "loss control" engineer had visited Purnell's on a monthly basis. During these regular visits this Aetna engineer had consulted with Dick Guyton, Purnell's personnel director who also served as its plant safety officer, to discuss any accidents which had occurred since his last visit. They checked with the company nurse for her inquiries and comments and "looked into" areas where accidents had occurred. Aetna's engineer also attended meetings called by Purnell's to discuss safety with its employees. On occasion, Aetna made recommendations concerning safety improvements when Purnell's safety program personnel encountered problems they could not answer. Where Purnell's regarded these recommendations as practical within the industry and its own operation and not in conflict with the U. S. Department of Agriculture regulations, they were usually followed.

Distilling the most favorable facts proven which would support the jury verdict, we find that Aetna had a contractual right to make inspections at any point in Purnell's operations; in a two year period prior to Stacy's accident Aetna did make regular monthly inspections of those parts of Purnell's complete operation to which Aetna was directed by Purnell's or at which Purnell's accident reports indicated workmen had been hurt; Aetna was never requested to inspect the ice storage room because no accident had ever been reported there before Stacy's injury; and Aetna never undertook to inspect this room prior to that day.

Stacy contends that, having reserved the right to inspect and having undertaken to participate in Purnell's safety program, Aetna's failure to inspect the ice storage room and to discover the dangerous conditions therein rendered the carrier directly liable to him. This contention is founded on the legal principles expressed by § 324A of the Restatement of Torts, Second (1965):

One who undertakes, gratuitiously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

While we find no Mississippi case precisely in point, we assume from the favorable citation of a related section, § 325 of the First Restatement of Torts, in Long v. Patterson, 198 Miss. 554, 22 So.2d 490, 492 (1945), that the Mississippi courts would now adopt the rule of 324A. *Accord* Hill v. United States Fidelity & Guaranty Co., 428 F.2d 112, 115–116 (5th. Cir. 1970), cert. denied, 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971); Roberson v. United States,

382 F.2d 714, 718 (9th Cir. 1967). However, even giving Stacy the benefit of the progressive principles of § 324A, we find that the evidence failed to establish that Aetna was under a legal duty to inspect the ice storage room and therefore the case should not have been submitted to the jury to determine whether its failure to do so amounted to negligence.

Because no representative of Aetna, at any time prior to Stacy's accident, conducted an actual inspection of Purnell's ice storage room or of the ice conveyer system Stacy's case is immediately distinguishable from the situation where an inspecting workmen's compensation carrier undertakes, but negligently performs, an inspection of the injury-producing instrumentality. *See, e. g.*, Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844, 846 (1971); Nelson v. Union Wire Rope Co., 31 Ill.2d 69, 199 N.E.2d 769, 779 (1964); Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361, 362, 93 A. L.R.2d 591 (1963); Smith v. American Employers' Ins. Co., 102 N.H. 530, 163 A.2d 564, 566 (1960).

On the facts of the present case, Aetna's liability must find support in proof that it undertook an inspection program which obligated it to seek out and report safety defects anywhere in Purnell's processing facility and that this undertaking amounted to an assumption of a duty of inspection owed by Purnell's to its employees or that Stacy's injury resulted from reasonable reliance on Aetna's undertaking.[4] Stacy's only claim of proof that Aetna had

undertaken such a comprehensive safety inspection is based upon that portion of Aetna's amended answer which states:

> Defendant admits that it made periodic inspections of said plant and the complete operation of said employer pursuant to permission granted by Paragraph 3 of the conditions of said policy of workmen's compensation insurance which provided in part as follows:

> > "The company and any rating authority having jurisdiction by law shall each be permitted but not obligated to inspect at any reasonable time the work places, operations, machinery and equipment covered by this policy. Neither the right to make inspections nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the insured or others, to determine or warrant that such work places, operations, machinery or equipment are safe."

> Defendant avers that such inspections were on a consultant basis and denies all other allegations of Paragraph III of the complaint.

According to the uncontradicted evidence developed at trial "periodic inspections of said plant and the complete operation of said employer" amounted to a limited undertaking to conduct safety engineering services in those areas of all of Purnell's various facilities where either the director of the company's own safety program or records of previous accidents indicated that professional

---

4. We discuss here only the applicability of subparts (b) and (c) of § 324A. There is no contention that any act or omission by Aetna resulted in construction, alteration, or deterioration of any facility or condition within the ice storage room which increased the likelihood of harm to Purnell's employees within the meaning of subpart (a) of § 324A. This case is clearly distinguishable from Bufkin v. Grisham, 157 Miss. 746, 128 So. 563 (1930), a Mississippi decision cited as an illustration of subpart (a). In that case the manager of a bottling plant was held liable for his personal negligence in permitting a foreign substance to get into a bottle of soft drink filled under his supervision. The court held that the failure of the manager to remain "properly watchful" directly increased the likelihood of injury to consumers, since he was the person immediately responsible for keeping deleterious substances out of the bottling process.

consultation was needed.[5] Testimony that Aetna's undertaking was thus limited in its scope was admitted without objection that such proof was in anywise at variance with Aetna's original pleading. F.R.Civ.P., 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

If Stacy desired to take the position that Aetna's admission in its answer was a concession that it had actually inspected the ice storage room or that it had undertaken an inspection program of such broad scope that in the exercise of due care it should have inspected that particular part of Purnell's poultry processing plant, it was incumbent upon Stacy to oppose the introduction of evidence directly at variance with his claim of admission. Instead of an objection we find that Stacy not only allowed the full development of a line of inquiry which established that Aetna engaged in a much more limited undertaking of acting as a consultant to Purnell's safety program, but also conducted vigorous cross-examination into the particulars of this specialized, responsive sort of consultation service. By operation of Rule 15(b), any contrary admission, plain or ambiguous, was amended out of Aetna's pleading.

■ An amended pleading cannot be properly considered by the fact-finder unless it is properly introduced into evidence as a party admission. Borel v. United States Cas. Co., 233 F.2d 385, 387 (5th Cir. 1956); Proctor & Gamble Defense Corp. v. Bean, 146 F.2d 598, 601 (5th Cir. 1945), see also Shell v. Parrish, 448 F.2d 528, 530 (6th Cir. 1971); Fruco Const. Co. v. McClelland, 192 F.2d 241, 245 (8th Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952). In the present case, Aetna's answer was not so introduced.

■ Purnell, of course, was required by law to maintain a safe work place for its employees. Long v. Woollard, 249 Miss. 722, 163 So.2d 698 (1964). Included in this obligation is the duty to inspect its own premises to discover hazardous conditions. See, e. g., Alexander v. Jackson County Historical Society, Inc., 227 So.2d 291 (Miss.1969), citing § 343 of the Restatement of Torts, Second (1965). The record shows without equivocation that the company at no time delegated to Aetna or Aetna's loss control engineer, either by contract or by a course of conduct, any part of its direct and primary duty to discover unsafe conditions. Proof that the insurer assisted Purnell in those particular areas of its operation where the company. felt it needed outside advice and recommendations falls far short of system-wide assumption of Purnell's duty to discover latent hazards.[6]

---

5. President Purnell testified that the company program had been instituted at his personal suggestion. Aetna's role in this safety program was that "they were available on a consulting basis, if [Purnell's] called on them. . . ." When questioned as to why Aetna did not inspect the ice storage room prior to the accident, Purnell testified: "I am sure that he inspected where we needed the help the most. We had not had an accident in there in over 15 years. . . . we had [other] areas we thought needed attention more." Company Safety Director Guyton testified that Aetna's periodic visits "basically [concerned] the investigation of accidents that had happened in the past." Since no accidents had occurred in the ice storage room prior to Stacy's fateful slip, Guyton testified that Aetna's attention had never been directed to that area of the plant.

6. As an illustration of subpart (b) of § 324A, the authors of the Restatement of Torts, Second, cite Miss. Power & Light Co. v. Smith, 169 Miss. 447, 153 So. 376 (1934). Smith was killed by a broken drive belt in a cotton gin owned by M.P.&L. Smith's widow sued both the owner and Tynes, the superintendent

Finally, there is no evidence that Stacy's accident occurred because of reliance by either the plaintiff himself or by Purnell's management on Aetna's undertaking. Although Stacy testified that he had seen Aetna's loss control engineer in the plant and that he had attended at least one plant safety meeting at which Aetna's representative was also present, Stacy offered no testimony that he had seen the Aetna engineer inspect the ice storage room or that he had relied upon the completeness or accuracy of Aetna's inspection service for his own protection. *cf.* Evans v. Liberty Mutual Ins. Co., 398 F.2d 665, 667 (3d Cir. 1968); DeJesus v. Liberty Mutual Ins. Co., 423 Pa. 198, 201, 223 A.2d 849, 850 (1966); Bartolotta v. Liberty Mutual Ins. Co., 411 F.2d 115, 119 (2d Cir. 1969). Under the Restatement rule, reliance by the plaintiff-employee on the inspection service undertaken by the defendant-insurer is not the sole path to liability. The carrier may also be liable if the employer so relied on the insurer's undertaking that it neglected its own safety inspection program to his detriment. See Corson v. Liberty Mutual Ins. Co., 110 N.H. 210, 265 A.2d 315, 318–319 (1970). As this court recently pointed out in applying the rule of § 324A to the liability of an inspecting insurance company,

. . . an insurer may by the manner of conduct of safety inspections, or its representation concerning safety inspections, create serious risk of harm to third persons if the insured relies on what the insurer says or does. If the [insured] in reliance on what the insurer undertakes to do lessens or omits its own safety measures and the insurer does not perform with due care what it has undertaken to do [third persons foreseeably using the insured's premises] are potential victims.

Hill v. United States Fidelity & Guaranty Co., *supra*, 428 F.2d at 120. However, reliance will not be assumed merely from the existence of a permissive inspection clause in an insurance policy. Mann v. Highland Ins. Co., 461 F.2d 541 (5th Cir. 1972). The insurer's liability must rest upon proof of actual reliance by the insured on the contractual undertaking or on the subsequent representations by the insurer which resulted in acts or omissions by the insured. *Cf.* Keller v. Dravo Corp., 441 F.2d 1239, 1243 (5th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). The evidence in the present case fails to establish that Purnell had relied on Aetna's inspection services to Stacy's detriment. To the contrary, the proof discloses that the decision of Purnell's management not to undertake safety improvements in the ice storage room area was not the result of a belief that Aetna had inspected this area of the plant or that Aetna in any way approved the operations there for safety purposes.

The court submitted the issue of liability to the jury on the theory that Aetna had undertaken to perform a general safety engineering service which obligated Aetna to inspect any area of Purnell's operations where latent safety defects might exist. Our review of the record reveals no proof that Aetna ever contracted or undertook to conduct such a comprehensive inspection service. At most, it undertook to inspect and therefore was obliged to use reasonable care in inspecting those areas of Purnell's operations which were called to its attention by the management or by reports of previous accidents.

---

of the gin. Affirming a verdict against Tynes, the Mississippi Supreme Court stated "Tynes is held liable because . . . he did not discharge the common-law duty which he owed to Smith. Tynes was the only man who assumed to direct Smith and it was Tynes' duty to exercise reasonable care to prevent injury to him." 169 Miss. at 465, 153 So. at 380. The evidence in the case *sub judice* does not suggest that Aetna assumed to direct Purnell's plan safety program in a manner in any way comparable to Tynes operation of M.P.&L.'s gin. *Cf.* Clark v. Employers Mutuals of Wausau, 297 F.Supp. 286 (E.D.Pa.1969).

The court was in error in refusing to direct a verdict for Aetna at the close of the evidence. The final judgment appealed from is reversed and the cause is remanded with directions to enter a judgment for the defendant.

Reversed and remanded.