Billy CANIPE, Plaintiff-Appellant,

v.

NATIONAL LOSS CONTROL SERVICE
CORPORATION, Defendant-Appellee.

No. 83–4346.

United States Court of Appeals,
Fifth Circuit.

July 23, 1984.

Rehearing Denied Aug. 24, 1984.

Merkel & Cocke, Charles M. Merkel, John H. Cocke, Clarksdale, Miss., Todd & Deal, Memphis, Tenn., Lloyd Anthony Deal, Memphis, Tenn., for plaintiff-appellant.

Walter W. Thompson, Clarksdale, Miss., for defendant-appellee.

Before WISDOM, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This diversity action involves the applicability of the principles of section 324A of the American Law Institute's Restatement (Second) of Torts (1965) to a tort case subject to Tennessee law. Section 324A deals with the liability of an actor, rendering services to one person, for failure to exercise reasonable care to protect a third person.

Billy Canipe sues to recover for a severe personal injury that he sustained at work. The defendant, National Loss Control Service Corporation (National Loss), had contracted with the plaintiff's employer (Kraft, Inc.) to provide safety inspections and related accident-prevention services at the plant in which the plaintiff worked. Canipe alleges that the defendant performed

its contractual duties negligently, and that this negligence was a proximate cause of the plaintiff's injury. After a long period of discovery, the district court ruled that the plaintiff had presented no genuine issue of material fact, and therefore granted the defendant's motion for summary judgment. *Canipe v. National Loss Control Service Corp.*, N.D.Miss.1983, 566 F.Supp. 521. Because of the thoroughness and thoughtfulness of the district court's opinion, we are hesitant to overturn the court's decision. Nevertheless, we have concluded that the decision rests upon an erroneous legal premise. Accordingly, we affirm in part, reverse in part, and remand.

I.

Summary judgment is appropriate, of course, only when the movant has demonstrated the lack of any genuine issue of material fact. In reviewing a grant of summary judgment for the defendant, we must examine the record in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Gulf Mississippi Marine Corp. v. George Engine Co.*, 5 Cir.1983, 697 F.2d 668, 670–71. Viewed from that perspective, the facts of this case are as follows.

The defendant is a national corporation engaged in the business of helping other companies improve workplace safety. National Loss entered into its contractual relationship with Kraft in January 1978.[1] The contract between these two parties was national in scope and was intended to establish only the general framework for National Loss's provision of services to the various Kraft plants around the country. The primary purpose of this contract, therefore, was to set the hourly rates for the various services that National Loss could provide to Kraft plants. The service to be performed at a particular plant was to be determined on a "by request" basis. Under the arrangement between National

---

1. The contracts between Kraft and National Loss were each for a one-year term. The parties renewed their original agreement, without substantial modification, every year between 1978 and 1982.

Loss and Kraft's Humko[2] plant in Memphis, Tennessee, National Loss agreed to conduct quarterly safety inspections of the plant and to provide the plant management with loss experience analyses.[3] Humko plant management, in addition to contracting for these services, conducted its own periodic safety inspections of the plant.

On July 5, 1979, Kraft's Corporate Safety Manager, Jack Hansen, sent the following memorandum to all of Kraft's safety managers:

"Attached for your information is a copy of an OSHA–Gram from the *National Safety News*. It explains the change in OSHA's position on defining a serious violation. This new definition will probably result in our locations receiving more serious violations and higher penalties. Obviously, the answer is to survey all of our respective locations to make sure that the locations do not have any OSHA violations."

On July 10, Allen Jamison, who was the Kraft official in charge of coordinating safety inspections at the Humko plant, wrote to the National Loss manager of the Kraft account. That letter states in pertinent part:

"In reference to Jack Hansen's memo of July 5, 1979[,] explaining the change in OSHA's position on defining a serious violation, I would like to request that your Loss Control people during their third quarter visit concentrate more on an OSHA type inspection, and if any serious violations are observed, to include them in the recommendation section. The third quarter is the only quarter that we would like the format changed."

During their next visit to the Humko plant, which occurred in September 1979, the National Loss inspectors conducted a thorough four-day search of the plant, concentrating on detecting violations of OSHA regulations. The two inspectors later sent plant management a detailed, forty-four page report on the violations they had discovered.

Canipe worked at the Humko plant as Assistant Operator of two machines known as "flake roll machines", which are capable of producing different types of flaky chemical products. As a part of his duties, he was required to clean each machine whenever production on that machine shifted from one product to another. To clean the machine, he had to lift a transparent plastic dust cover and then use an air hose to force out of the machine's auger trough any matter remaining in the trough. Canipe contends that he was taught a method of cleaning the machine while the auger was in motion. On January 31, 1980, while cleaning one of the machines in this manner, Canipe caught his shirt sleeve on a large pin at the end of the auger. He was pulled into the machine and his right arm was amputated.

Canipe sued National Loss on November 20, 1981. He based his primary theory of recovery upon section 324A of the Restatement (Second) of Torts (1965) which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance by the other or the third person upon the undertaking."[4]

**2.** Humko Products is a division of Kraft.

**3.** Loss experience analyses are retrospective analyses of previous accidents. The objective of these analyses is to identify safety problems by noting statistical trends in, for example, the locations or types of injuries experienced at the plant.

**4.** Canipe also seeks to recover based on the alleged breach by National Loss of the contract between it and Kraft. Canipe's argument here

On April 28, 1983, the district court granted the defendant's motion for summary judgment on the ground that Tennessee law did not recognize the applicability of the principles underlying section 324A. The plaintiff moved for reconsideration. The court then reversed its position on the applicability of section 324A under Tennessee law, but granted summary judgment for the defendant nonetheless, holding that the plaintiff had not presented any facts that would justify applying section 324A. The plaintiff appeals that decision.

## II.

National Loss contends that the district court erred in holding that section 324A provides a valid basis for recovery under Tennessee law. National Loss also contends that, if Tennessee law does recognize section 324A, the district court was correct in holding that Canipe's allegations do not implicate section 324A. Canipe argues that the court correctly held the principles underlying section 324A are cognizable in Tennessee, but that it incorrectly concluded that the plaintiff had not alleged facts sufficient to warrant recovery under section 324A. We agree with the plaintiff on both parts of his argument.

## A.

The district court's holding that section 324A states Tennessee law rested upon the decision of the Court of Appeals for the Sixth Circuit in *Neal v. Bergland,* 6 Cir. 1981, 646 F.2d 1178, *aff'd sub nom. Block v. Neal,* 1983, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67. The plaintiff in *Neal* had bought a prefabricated home in Tennessee that had been inspected by an employee of the United States Farmers Home Administration. Although the inspector had noted no problems with the house, it later turned out to be defective. The plaintiff sued various federal officials in Tennessee state court, and the defendants removed the action to federal district court. The district court dismissed the complaint. The Court of Appeals reversed, holding that the plaintiff had stated a cause of action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq. (1982). The Court's perceived basis for the plaintiff's potential recovery against the government was the principle "that one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care". 646 F.2d at 1181–82.[5]

We place little weight upon the *Neal* decision. The Court there did not state explicitly that it was applying Tennessee law, and it does not discuss any Tennessee cases.[6] Nonetheless, it is reasonably well recognized that the federal government is liable under the FTCA only if the applicable state law would place liability upon a private actor in like circum-

---

is that he was a third-party beneficiary of this contract. The district court ruled that, as a matter of Tennessee law, the plaintiff could not recover on this theory. Our reversal of the district court's holding on § 324A renders it unnecessary to address the correctness of the court's holding on the breach-of-contract argument.

**5.** The Court referred to § 323 of the Restatement (Second) of Torts (1965) as an expression of this principle. Section 323 states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or
"(b) the harm is suffered because of the other's reliance upon the undertaking."
Sections 323 and 324A are often cited together as expressions of the same basic principle. *See, e.g., Blessing v. United States,* E.D.Pa.1978, 447 F.Supp. 1160, 1187 & n. 39, 1193; Restatement (Second) of Torts § 324A comment a (1965).

**6.** In reviewing the *Neal* decision, the Supreme Court noted this deficiency in the opinion of the Court of Appeals. *See Block v. Neal,* 460 U.S. at 294 n. 3, 103 S.Ct. at 1092 n. 3, 75 L.Ed.2d at 73 n. 3. Because the government had not appealed that part of the Court of Appeals' opinion, however, the Supreme Court did not evaluate its validity. *See id.* at 294, 103 S.Ct. at 1092, 75 L.Ed.2d at 73.

stances. *See* 28 U.S.C. § 1346(b) (1982); *id.* § 2674; *see also, e.g., United Scottish Insurance Co. v. United States,* 9 Cir.1980, 614 F.2d 188, 193. We conclude, therefore, that the district court was correct in deciding that the *Neal* Court was "attempting to make an educated *Erie* guess" as to Tennessee law.

■ Furthermore, our independent review of Tennessee case law convinces us that Tennessee has adopted the principle of section 324A. The leading decision is *Johnson v. Oman Construction Co.,* Tenn. 1975, 519 S.W.2d 782. In that case, the state had hired an independent contractor to construct an interstate highway. The plaintiffs' son was killed when he drove his car into a construction barricade erected by the construction company. The plaintiffs alleged that the company was negligent in that it did not adequately mark the barricade so as to warn oncoming traffic. The trial court dismissed the suit, but the Tennessee Supreme Court reversed. In holding that the contractor could be liable for his negligence despite the existence of its contractual relationship with the state and despite the state's inspection of the work in question several days before the accident, the supreme court reasoned:

> "In our opinion, if an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injuries or property damage as a result of the negligent condition, then the independent contractor should not, as a matter of law, be discharged merely because his work has

been accepted and delivered to the owner."

519 S.W.2d at 788. Two cases involving similar facts and reaching essentially the same holding are *Broome v. Parkview, Inc.,* 1962, 49 Tenn.App. 725, 359 S.W.2d 566, 568, and *De Ark v. Nashville Stone Setting Corp.,* 1955, 38 Tenn.App. 678, 279 S.W.2d 518, 521. *See also Nidiffer v. Clinchfield Railroad Co.,* Tenn.Ct.App. 1980, 600 S.W.2d 242, holding that a volunteer who undertakes to act is " 'subject to the duty of acting carefully, if he acts at all' ". *Id.* at 246 (quoting *Glanzer v. Shepard,* 1922, 233 N.Y. 236, 135 N.E. 275, 276).[7]

Although none of these cases refers to section 324A explicitly, they all embody the basic theory of liability underlying section 324A. And, we have found no state decision that runs counter to the principle of section 324A.[8] In *Mosley v. United States,* E.D.Tenn.1978, 456 F.Supp. 671, the court addressed the liability of the federal government under the FTCA for the death of a mineworker. The plaintiff alleged that government inspectors were negligent in not detecting the dangerous condition that led to the accident causing the worker's death. The district court concluded that Tennessee had not adopted sections 323 and 324A of the Restatement, and granted summary judgment for the government. We cannot give the *Mosley* decision much credence. In reaching its conclusion concerning sections 323 and 324A, the opinion does not discuss any Tennessee cases, let alone the ones mentioned in the preceding paragraph. Nor does *Mosley* address *State v. Clymer,* 1943, 27 Tenn.App. 518, 182 S.W.2d 425, an analogous case involv-

---

7. We consider it marginally relevant that five of Tennessee's sister states have adopted section 324A. *See Gray v. Charles Beck Mach. Corp.,* S.D.Ga.1980, 495 F.Supp. 250, 252 (citing *Huggins v. Aetna Casualty & Sur. Co.,* 1980, 245 Ga. 248, 248, 264 S.E.2d 191, 192); *Glover v. Silent Hoist & Crane Co.,* N.D.Ala.1979, 471 F.Supp. 457, 459–60 (discussing *United States Fidelity & Guar. Co. v. Jones,* Ala.1978, 356 So.2d 596, 597–98); *Raymer v. United States,* W.D.Ky.1978, 455 F.Supp. 165, 167 (citing *Haddad v. Louisville Gas & Elec. Co.,* Ky.1970, 449 S.W.2d 916); *Fuller v. Aetna Casualty & Sur. Co.,* S.D.Miss.1974,

369 F.Supp. 967, 968; *Quail Hollow East v. Donald J. Scholz Co.,* 1980, 47 N.C.App. 518, 268 S.E.2d 12, 15, *review denied,* 301 N.C. 527, 273 S.E.2d 454.

8. The same is true of Tennessee statutory law. *See* Tenn.Code Ann. § 29–34–104 (Michie 1980):

> "Privity not required. In all causes of injury for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, ... privity shall not be a requirement to maintain said action."

ing a mining accident and a lawsuit against state mine inspectors. In *Clymer*, the Tennessee court of appeals held that the inspectors could be liable to mineworkers killed or injured in an accident that could have been prevented had the inspectors performed their duties non-negligently. *See id.* at 429–31. We therefore reject the *Mosley* court's interpretation of Tennessee law.

We hold that the district court was correct to conclude that section 324A, in principle, provides a valid basis for recovery under Tennessee law. We affirm that part of the district court's decision.

### B.

To recover under section 324A, a plaintiff must prove (1) that the defendant undertook to provide services for another that the defendant should recognize as necessary for the protection of the person or property of the plaintiff, (2) that the defendant performed its undertaking negligently, and that this negligence was the proximate cause of the plaintiff's injury, and (3) that the situation among the parties exemplifies one of the three subsections of section 324A. The parties do not dispute the applicability of the first element to the instant case. Summary judgment for the defendant was appropriate, therefore, only if the defendant established beyond genuine dispute that the facts of this case do not implicate the second and third elements. We find that National Loss has not carried this burden.

### 1.

■ To determine whether the record contains facts indicating that National Loss performed its undertaking negligently, it is first necessary to ascertain the scope of the undertaking, for the scope of the defendant's undertaking determines the scope of its duty. *See Blessing v. United States*, E.D.Pa.1978, 447 F.Supp. 1160, 1189–90; *Fireman's Fund American Insurance Co. v. Coleman*, Ala.1980, 394 So.2d 334, 349

(Jones, J., concurring in the result); *Evans v. Otis Elevator Co.*, 1961, 403 Pa. 13, 19, 168 A.2d 573, 576. One of the parties' principal disputes on appeal concerns the scope of National Loss's undertaking. Canipe contends that National Loss contracted to inspect and evaluate work practices and procedures. He argues, therefore, that National Loss was negligent for not recognizing the unsafe nature of the cleaning procedure taught to the plaintiff. The district court held, and the defendant asserts on appeal, that the contract made the defendant responsible only for inspecting for physical hazards.

We find it unnecessary to resolve this dispute. Accepting the defendant's characterization of its contractual obligations, we find that the record contains facts that at least establish as a genuine issue whether the defendant performed these obligations negligently. The parties agree that National Loss was obligated to inspect for physical hazards, and that in September 1979 its agents were looking specifically for violations of OSHA regulations. Canipe has pointed to evidence in the record implying that negligence by National Loss in its inspection for physical hazards and OSHA violations proximately caused his injury. First, the depositions of the two inspectors who conducted the September 1979 survey indicate clearly that they examined the two flake roll machines the plaintiff operated. Second, the plaintiff submitted an affidavit by Dr. Louis B. Trucks, an expert in safety engineering, listing a number of physical hazards in the flake roll machines. Dr. Trucks found that the machines were inadequately guarded and did not contain adequate warnings, that the on-off switch was located on a different level and 30 feet away from the machines, and that the machines did not contain an emergency switch-off for workers who find themselves in peril. In Dr. Trucks's opinion, some of these hazards constituted violations of OSHA regulations.[9] All of these facts support the plain-

---

**9.** *See generally* 29 C.F.R. § 1910.212 (1983):

"(a) *Machine guarding*—(1)—*Types of guarding.* One or more methods of machine

tiff's allegation of negligence on the part of the defendant.

Similarly, the record contains evidence that the alleged negligence was the proximate cause of the plaintiff's injury. Allen Jamison, the Kraft official in charge of coordinating safety policy at the Humko plant, stated in his deposition that Kraft would remedy any OSHA violations uncovered by the National Loss inspectors regardless whether the remedies were cost justified. It cannot be disputed that Canipe might not have been injured had National Loss detected, and Kraft remedied, the physical hazards that Dr. Trucks identified in the flake roll machines. There was, therefore, at least a genuine issue as to whether the defendant negligently performed its contractual undertaking and whether this negligence proximately caused the plaintiff's injury.

### 2.

A plaintiff seeking to recover under section 324A must demonstrate that the facts of his case come within one of the three subsections of section 324A. Therefore, to paraphrase section 324A, we cannot affirm the grant of summary judgment for the defendant in the present case unless the record shows that there is no genuine issue whether

(a) the defendant's failure to exercise reasonable care increased the risk of the injury suffered by the plaintiff, or

(b) the defendant undertook to perform a duty owed by Kraft to the plaintiff, or

guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two hand tripping devices, electronic safety devices, etc.
. . . .
"(b) *General requirements for machine guards.* Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible."

(c) the plaintiff's injury resulted from reliance by Kraft or the plaintiff upon the defendant's undertaking.

We find the district court's holding on this point erroneous.

 The district court correctly determined that subsection (a) of section 324A does not apply to this case. This subsection requires some change in conditions that increases the risk of harm to the plaintiff over the level of risk that existed before the defendant became involved. *See Stacy v. Aetna Casualty & Surety Co.,* 5 Cir.1973, 484 F.2d 289, 293 n. 4; *Blessing v. United States,* E.D.Pa.1978, 447 F.Supp. 1160, 1197 n. 53. A failure to detect a hazardous condition does not by itself implicate subsection (a).

 The district court erred, however, by taking an unduly narrow approach to subsections (b) and (c). Implicit in the district court's treatment of subsection (b) is the assumption that this subsection applies only if Kraft had delegated *entirely* "the responsibility to provide its employees, including plaintiff, with a safe working environment".[10] 566 F.Supp. at 527. Similarly, the district court's discussion of subsection (c) apparently assumes that Kraft's reliance on National Loss must have been *wholesale* —that is, preclusive of Kraft's undertaking any similar safety services itself—for subsection (c) to apply. *See id.* at 528.

Such a restrictive approach to subsections (b) and (c) is not supported by the relevant cases. Subsection (b) comes into play as long as the party who owes the plaintiff a duty of care has delegated to the

10. The district court cited *Overstreet v. Norman,* 1957, 44 Tenn.App. 343, 314 S.W.2d 47, for the proposition that, under Tennessee law, an employer cannot delegate its duty to provide a safe working place for its employees. We agree with the plaintiff that *Overstreet* is inapposite here. That decision establishes only that an employer cannot avoid liability by delegating its duty to another party; it does not create an immunity for other parties who contract to provide safety services.

defendant any particular part of that duty.[11] *See Davis v. Liberty Mutual Insurance Co.*, 5 Cir.1976, 525 F.2d 1204, 1208. In *Hill v. James Walker Memorial Hospital*, 4 Cir.1969, 407 F.2d 1036, for example, a hospital hired the Orkin Exterminating Company to rid the hospital of rats. The plaintiff, a patient at the hospital, suffered from a fall caused by her becoming frightened when a rat ran across her feet. In holding Orkin liable under section 324A(b) for the plaintiff's injury, the court reasoned:

"It is clear that the defendant hospital was under a legal duty to exercise reasonable care in regard to the safety of its patients, and that under its contract with Orkin, the latter had undertaken to perform *a certain aspect* of this duty in the hospital's behalf. The above-quoted section [324A(b)] squarely covers the instant case...."

407 F.2d at 1042 (emphasis added).

The district court relied on language in *Stacy v. Aetna Casualty & Surety Co.*, 5 Cir.1973, 484 F.2d 289, to the effect that a "systemwide assumption of [the employer's] duty to discover latent hazards", *id.* at 294, is prerequisite to the application of subsection (b). *See* 566 F.Supp. at 528. This reliance was misplaced. Of critical importance to the Court in *Stacy* was the fact that the defendant was not specifically obligated to inspect, and had not inspected, the room in which the plaintiff was injured.

"Because no representative of Aetna, at any time prior to Stacy's accident, conducted an actual inspection of [the employer's] ice storage room or of the ice conveyor system, Stacy's case is immediately distinguishable from the situation where an inspecting workman's compensation carrier undertakes, but negligent-

ly performs, an inspection of the injury-producing instrumentality.

"On the facts of the present case, [therefore,] Aetna's liability must find support in proof that it undertook an inspection program which obligated it to seek out and report safety defects *anywhere* in [the employer's] processing facility ...."

484 F.2d at 293 (citations omitted; emphasis added). *Stacy*'s reference to "systemwide assumption" of duty, therefore, is inapplicable to any situation in which the plaintiff's injury arises within the specifically defined scope of the defendant's undertaking. In such situations, liability under section 324A(b) may result if an employer has delegated any part of its duty to discover and remedy unsafe working conditions. *See id.* at 294.

Similarly, an employer's partial reliance on the defendant's undertaking will suffice to trigger subsection (c). An employer need not forsake completely a particular aspect of its safety program. The reliance element of subsection (c) is satisfied if, in relying on the defendant's undertaking, the employer "neglect[s] or reduce[s]" its own safety program. *Bussey v. Travelers Insurance Co.*, 5 Cir.1981 (per curiam) (summary calendar), 643 F.2d 1075, 1078.[12]

The record in the present case contains evidence from which a jury could legitimately infer that Kraft delegated to National Loss its duty to identify OSHA violations at the Humko plant, and that Kraft relied on National Loss to identify OSHA violations at that plant. On July 5, 1979, Kraft's Corporate Safety Director, Jack Hansen, sent a memorandum to all of Kraft's safety managers instructing them to ensure that there were no OSHA violations at Kraft plants. Five days later, Al-

---

11. *See also Tillman v. Travelers Indem. Co.*, 5 Cir.1975, 506 F.2d 917, 921; *Stacy v. Aetna Casualty & Sur. Co.*, 5 Cir.1973, 484 F.2d 289, 294; *Blessing v. United States*, E.D.Pa.1978, 447 F.Supp. 1160, 1193–94; *Nelson v. Union Wire Rope Corp.*, 1964, 31 Ill.2d 69, 199 N.E.2d 769, 780; *Evans v. Otis Elevator Co.*, 1961, 403 Pa. 13, 168 A.2d 573.

12. *Accord Tillman v. Travelers Indem. Co.*, 5 Cir.1975, 506 F.2d 917, 921; *Stacy*, 484 F.2d at 295; *Hill v. United States Fidelity & Guar. Co.*, 5 Cir.1970, 428 F.2d 112, 120; *Heinrich v. Goodyear Tire & Rubber Co.*, D.Md.1982, 532 F.Supp. 1348, 1356; *see Fireman's Fund Am. Ins. Co. v. Coleman*, Ala.1980, 394 So.2d 334, 338–39.

len Jamison wrote to National Loss to request the simulated OSHA inspection.[13] These facts themselves imply delegation and reliance. In addition, Jamison stated in his deposition that Kraft had not itself inspected the Humko plant for OSHA violations,[14] and there is nothing in the record to show that the Humko plant kept any safety experts on its payroll.

The nature of the defendant's business and of its contractual relationship with Kraft is also significant. Many of the cases dealing with section 324A involve the employer's workmen's compensation or liability carrier, who performed inspections to reduce the loss experience of its insured and accordingly to benefit itself by reducing the claims it had to pay. In the case before us, the defendant is not an insurer at all. It is a company that holds itself out as an expert in safety services and that provides those services for a fee. Kraft hired the defendant specifically to find work hazards. These facts, in combination with those noted in the preceding paragraph, establish as a genuine dispute the applicability of section 324A(b) and (c). We must therefore reject the district court's conclusion to the contrary.

### III.

We affirm the holding of the district court that the principles embodied in section 324A are valid law in Tennessee; we reverse the holding that section 324A cannot apply to the facts indicated by the record. The defendant has not carried its burden of demonstrating the lack of any genuine issue of material fact concerning the applicability of section 324A. The record contains evidence that would support a jury finding that the defendant performed its undertaking negligently, that such negligence proximately caused the plaintiff's injury, and that Kraft either (1) delegated to the defendant part of Kraft's duty to maintain a safe workplace, or (2)

relied at least partly on the defendant to discover unsafe working conditions. The grant of summary judgment in favor of the defendant was erroneous.

The decision of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

13. The report generated from this inspection states that "[t]he purpose of the survey was to identify problem areas requiring corrective action necessary to bring the operations into compliance with Federal Standards." Supp.—Record, exh. P–4, at 1.

14. Deposition of Allen Jamison, at 57–58 (filed July 2, 1982).