**Eleanor FULLER, Plaintiff,**

v.

**AETNA CASUALTY & SURETY CO., INC., Defendant.**

**James FULLER, Plaintiff,**

v.

**AETNA CASUALTY & SURETY CO., INC., Defendant.**

**Civ. A. Nos. 72S-295(R), 72S-296(R).**

United States District Court,
S. D. Mississippi, S. D.

Jan. 29, 1974.

Ralph W. Pringle, Pascagoula, Miss., for plaintiffs.

Thomas L. Stennis, II, Gulfport, Miss., for defendant.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

The above consolidated actions are based on an accident occurring at the Thiokol Chemical Corporation, Moss Point, Mississippi, on December 13, 1966, from which plaintiff, James Fuller, received serious and permanent injuries. Fuller, suing for damages for his injuries, and his wife, Eleanor, suing separately for her damages as a result of the injuries to her husband, allege that on December 13, 1966, Fuller, a maintenance employee of Thiokol, was attempting to melt solidified sulphur in

a pipe which carried sulphur from a railroad tank car to a holding tank in the Thiokol plant. The method ordinarily used was to melt the sulphur by the application of an acetylene torch to that part of the pipe where the sulphur had solidified. Fuller stayed overtime to comply with his supervisor's request to melt the sulphur along a section of the pipe pointed out to him. After he applied the torch to about a two foot portion long enough for the metal to become molten, he began on an adjacent portion. This section, before it became molten, burst, spewing hot, liquid sulphur into plaintiff's eyes, nose and throat and the outside areas of his face and neck.

At the time suits were filed, defendant Aetna, as Thiokol's compensation carrier, had expended $37,545.81 in medical expenses for Fuller's injuries and $11,667.00 in compensation benefits.

In these actions, the plaintiffs claim that Aetna, by reason of being Thiokol's comp carrier, had undertaken to perform safety inspections throughout Thiokol's chemical plant, and negligently (1) failed to properly inspect the premises in a reasonable manner; (2) failed to inspect the premises a reasonable number of times; (3) failed to warn plaintiff of a dangerous condition, namely, a pipe transfer system which broke on the date of the accident; (4) negligently tested the pipeline used to transfer sulphur from the railroad cars to the plant, and (5) failed to test the pipeline.

Plaintiffs also named as a defendant the unknown manufacturer of the pipe. To date this defendant remains unknown.

Aetna has denied each allegation of negligence. Aetna admits that it made inspections of the Thiokol plant prior to plaintiff's accident, but only as to open and obvious conditions in the plant, and has never made or assumed the obligation to make inspections of any technical aspect of the chemical plant, its machinery, pipes or equipment, and particularly as to the size of pipes, pressure within pipes, or the substance being moved in the pipes.

Aetna filed motions to dismiss in each case claiming that plaintiffs' exclusive remedy is Mississippi Workmen's Compensation, and has filed motions for summary judgment based on the pleadings, depositions and supporting affidavits.

These motions are before the Court.

■ The Court overrules the motions to dismiss on the basis of the decision in Stacy v. Aetna, D.C., 334 F.Supp. 1216, and its own decision in Tillman v. Travelers, Civil Action No. 4992(R), Jackson Division, both decisions holding that an injured claimant is not deprived of his right to proceed in common law against the compensation carrier for the carrier's alleged negligence in failing to properly inspect the employer's premises, despite the immunity of the employer under workmen's compensation.

In the Stacy case, a jury found that Aetna did not exercise reasonable care when it failed to inspect an ice storage room in the employer's poultry processing plant. On appeal, Stacy v. Aetna, 5th Circuit, 484 F.2d 289, 1973, Judge Clark reversed the lower court's verdict against Aetna on the grounds that the evidence, when viewed in the light most favorable to the plaintiff, failed to establish a cause of action. Despite Aetna's contractual right to make inspections at the plant and the fact that Aetna did make regular monthly inspections, these inspections were only to those parts of the processing operation to which Aetna was directed by the employer, or where the employer reported there had been previous accidents. The claimant, Stacy, was injured in the ice storage room. The appellate Court found that Aetna never undertook to inspect that room. Judge Clark, after discussing the application of the legal principles expressed in #324 A of the Restatement of Torts, Second (1965), and, assuming that Mississippi would adopt these principles, then said the Stacy

claim was to be distinguished from those situations where the carrier undertakes, but negligently performs, an inspection of the injury-producing instrumentality. He further found: "The record shows without equivocation that the company at no time delegated to Aetna or Aetna's loss control engineer, either by contract or by a course of conduct, any part of its direct and primary duty to discover unsafe conditions. Proof that the insurer assisted Purnell (employer) in those particular areas of its operation where the company felt it needed outside advice and recommendations falls far short of system-wide assumption of Purnell's duty to discover latent hazards."

While the Stacy case does not support defendant's motions on the ground claimed, the appellate decision in Stacy does support defendant's motions for summary judgment.

■ Initially, the motions should be granted under F.R.C.P. 56 only "if the pleadings, depositions [answers to interrogatories], and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment should be granted only when it is clear factually what the truth of the matter is. Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458.

■ In the case sub judice, both plaintiffs have been deposed. Mrs. Fuller had no direct knowledge of how the accident to her husband occurred or the circumstances surrounding it. She was not familiar with the Thiokol plant nor her husband's job as a maintenance man. Fuller said he had worked at Thiokol nine years, the first six years as an operator mixing chemicals and making synthetic rubber. He was familiar with the plant's operations. The last three years he was employed in the maintenance department working "all over the plant." He had been called on before his accident to heat pipes to free or melt sulphur "approximately once or twice a month." On the day of his accident he was working on an elevated 2″ pipe that ran from a railroad tank car to a storage tank in the plant. Its purpose was to transfer sulphur from the railroad car to the plant for use in its operations. The pipe was from fifty to seventy-five feet in length. His supervisor directed him to about a ten foot length of the pipe where the sulphur was thought to be solidified. Fuller climbed a ladder up to the pipe and used an acetylene torch as he previously had used. He applied the torch to a foot of pipe at a time. He had heated about two feet and started on the next section for a minute or two when the pipe burst. According to Fuller the pipe was wrapped in copper tubing outside of which insulation was cemented. In order to melt the sulphur, the outside cemented jacket and the copper tubing had to be removed and then replaced after the melting procedure had been finished. The outside coverings had been removed by other workmen before Fuller started his procedure to melt the sulphur. He noticed no defect in the pipe, but said if there had been one he would not have been able to see it through the bud of flame at the end of the torch. He was wearing gloves and safety eye glasses at the time.

Fuller further deposed that he had observed Aetna inspections several times, and had on occasion accompanied an inspector answering whatever questions were asked. He said these inspections were general inspections such as checking the pressure on fire mains. They did not include the pipes carrying chemicals. In an affidavit in opposition to defendants' motions for summary judgment, plaintiff stated that he had observed the Aetna safety inspectors and that their inspections were conducted throughout the plant, including "the area containing the pipe which broke."

Aetna relies on the affidavits of Thiokol's general manager, plant engineer and maintenance foreman and the affi-

davits of three of its safety engineers who made inspections of the Thiokol plant during the years preceding plaintiff's accident. The general manager, plant engineer and maintenance foreman acknowledged that Aetna made quarterly safety inspections at the Thiokol plant for the years 1962 to 1966 under the plant's workmen's compensation policy, but stated that these inspections covered only open and obvious conditions including conditions or areas where Thiokol had experienced difficulties. Aetna from time to time made suggestions but Thiokol reserved the right to control whether or not these suggestions were practical within its operations. The inspections did not cover any technical or chemical aspects of the plant, nor were the inspectors ever informed of the process of testing, assembling or chemically integrating any of Thiokol's products, or substance or material being moved within pipes, the size of the pipes or the material they were made of. To the knowledge of the affiants these inspectors were not familiar with the process of unloading molten sulphur from railcars or how the solidified sulphur was liquified to free the pipes, a procedure used and accepted in the sulphur industry. Moreover, the casing surrounding the pipe prohibited any visual inspection of the pipe itself.

Aetna's inspectors, though bearing the title of safety engineers, were not in fact trained chemical or mechanical engineers. Their affidavits were all in accord that their inspections covered only open and obvious conditions throughout the plant; their function was to make suggestions in the interests of plant safety, but their suggestions were advisory only, and were not related to any matters involving technical or expert knowledge. They were not informed as to Thiokol's chemical processes nor the procedures used in making Thiokol's products. None attempted to oversee the size of pipes, the contents, the amount of pressure within the pipes, the substance being moved within various pipes, or the material of the pipes themselves. None was familiar with the process of unloading molten sulphur nor the process of liquefying the sulphur to free pipe in the unloading process; nor had any inspected the transfer pipe involved herein or other asbestos covered pipe in the plant.

If a trial on the merits were afforded to plaintiffs, this Court cannot see how, with the evidence before it, that any liability can attach to Aetna for the failure of a pipe which Aetna had not inspected, and had not assumed the duty to inspect, particularly when any defect it may have had was not obvious, but indeed covered except when that particular piece of pipe had been unjacketed for purposes of freeing it from solidified sulphur. The reasoning of the Appellate Court decision in Stacy warrants the granting of the motions for summary judgment as to Aetna.

An appropriate order or orders may be submitted.