Kenneth C. TROSCLAIR and Randall K. Gilbert, Plaintiffs-Appellants,

v.

BECHTEL CORPORATION, et al., Defendants-Appellees.

No. 80–3790
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 7, 1981.

---

Watkins & Eager, P. N. Harkins, III, Velia Ann Mayer, Jackson, Miss., for defendants-appellees.

Before GEE, RUBIN and RANDALL, Circuit Judges.

PER CURIAM:

Although Mississippi courts have not ruled definitively, this circuit, following the predictive course required of it in diversity cases, has held that its courts would impose those duties on contractors expressed in the Restatement (Second) of Torts § 324A, and commonly called the Good Samaritan Doctrine. *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir. 1975); *Stacy v. Aetna Casualty & Surety Co.*, 484 F.2d 289 (5th Cir. 1973).[1] The plaintiffs in this personal injury action, Randall Gilbert and Kenneth Trosclair, rely on this doctrine in appealing a directed verdict entered against them at the close of the presentation of their evidence. Their case turns only on the application of the Restatement rubric to the facts. Finding that the evidence construed most favorably to them would not permit recovery, we affirm.

Bechtel, the defendant, was engaged by Middle South Energy, Inc. to construct the Grand Gulf Nuclear Power Plant at a site near Port Gibson, Mississippi. Bechtel then subcontracted with Ranney Company, an independent firm experienced in constructing radial wells, to build three wells to provide water for cooling the nuclear power plant. Constructed over a mile from the main plant site, these wells, or caissons, are large, round concrete structures, 130 to 140 feet deep with twenty to thirty feet of concrete walls above ground. They are

M. James Chaney, Jr., Landman Teller, Jr., Vicksburg, Miss., for plaintiffs-appellants.

1. In *Hartford Steam Boiler Inspection and Insurance Co. v. Cooper*, 341 So.2d 665 (Miss. 1977), the Supreme Court of Mississippi tested the plaintiff's claim against the elements of Section 324A, found the claim deficient, and denied recovery. Because the facts did not support a claim under Section 324A, the court expressly reserved the question "whether or not the rule [of Section 324A] should be adopted in whole or in part." 341 So.2d at 667 n.1. This reservation of judgment does not alter our prior conclusion in *Stacy* and *Tillman* that, in an appropriate case in which the issue is squarely presented, the Mississippi courts will adopt the doctrine stated in Section 324A.

thirteen feet in inside diameter, with two feet thick concrete walls. From the bottom of each well a number of passages radiate outward permitting water to enter and then to be drawn from the caisson.

The accident giving rise to this litigation occurred while Gilbert and Trosclair were working inside one of these caissons, about thirty feet from the top of the well. The two men were using a torch to cut bolts when some of the molten slag fell to the bottom of the well where, unknown to them, highly flammable methane gas had accumulated. The gas exploded and a fireball or ball of heat rose, severely burning them. Having a claim against Ranney only for workers compensation, they sued Bechtel in tort on the basis that Bechtel had failed in duties it owed them under Section 324A, Restatement (Second) of Torts. That section, the full text of which is set forth below,[2] interprets the common law of negligence as subjecting to liability for failure to exercise reasonable care one who undertakes to render services to another which he should recognize as necessary for the protection of a third person if any one of three conditions are present: the actor's failure to exercise reasonable care increases the risk of harm to the third person, or the actor has undertaken to perform a duty owed by the other person to the third person, or the harm is suffered because of reliance by the other or the third person on the actor's undertaking. Gilbert and Trosclair claim that Bechtel undertook to render safety services to Ranney and its employees, that Ranney Company and its employees relied on the safety inspections conducted by Bechtel, and that Bechtel negligently performed inspections and negligently failed to warn Ranney Company employees of the latent danger of methane gas in the wells.

At the close of the plaintiffs' case, the district court directed a verdict for Bechtel. In appraising a directed verdict, the test is whether, construing the evidence most favorably to Gilbert and Trosclair, there was substantial evidence from which a reasonable juror might render a verdict in their favor. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). We sum it up in that most partisan light.

■ Bechtel's contract with Ranney required Ranney to employ a full time safety representative and to take detailed safety measures. It required Ranney to follow Bechtel's project safety program including Bechtel's safety procedures manual. Members of Bechtel's safety department regularly inspected the Ranney work area to check for violations of Bechtel's safety rules, to monitor for compliance with safety recommendations made by Bechtel and its insurer, to ascertain that subcontractors, like Ranney, had available and used necessary safety equipment, and to check for unsafe conditions on the work site.

However, there is not the slightest evidence that Bechtel at any time conducted any of these activities for the purpose or with the idea of rendering services to Ranney or to its employees. Bechtel was entitled to contract for a safe operation by its subcontractors. Indeed its doing so, rather than leaving them to their own devices, however hazardous, is commendable. Having imposed such a contractual duty on the subcontractors, Bechtel was as much entitled, in its own interest, to monitor their performance in regard to safety measures, as it was entitled to be certain that the caissons' physical construction met the contract's engineering specifications. Here, as

---

2. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other person to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A.

in *Roberson v. United States*, 382 F.2d 714 (9th Cir. 1967),

> [i]n conducting its safety inspection program, the [prime contractor] was not undertaking to render services to the [subcontractor]. It sought only to protect its own interest, namely to assure itself that the [subcontractor] was performing in the manner required of it under the contract. The safety inspection activities of the [prime contractor] did not relieve the [subcontractor] of any of its contractual duties; quite to the contrary, it was designed only to make sure that the [subcontractor] performed those duties.

382 F.2d at 721. *See Beason v. United States*, 396 F.2d 2 (5th Cir. 1968); *Jeffries v. United States*, 477 F.2d 52 (9th Cir. 1973).

Although Bechtel's contract with Ranney required Ranney to have a full-time, qualified safety representative who would have no other duties, Ranney had a small work force at this site and Bechtel did not exact compliance with this requirement. Ranney did impose safety responsibilities instead on its construction superintendent. Bechtel's willingness to accept part time instead of full time safety supervision by Ranney cannot reasonably be converted into an assumption of Ranney's safety obligations to the subcontractor's own employees. Even if, as suggested by the plaintiffs, Ranney had no safety rules and regulations of its own and all such safety rules and regulations at the Ranney job site were imposed by Bechtel, this imposition of contractual safety conditions cannot be recast as an undertaking by Bechtel to serve Ranney or its workers. The remainder of the evidence is of a like kind: it sums up Bechtel's actions in regard to safety but does not suggest an undertaking by Bechtel in aught but its own interest.

Thus, there was no evidence that Bechtel undertook to perform a service for Ranney or its employees. *Roberson v. United States*, 382 F.2d at 721. *See Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 977–78 (5th Cir. 1975). Moreover, there was no evidence to establish the presence of any of the three conditions, one of which must exist to make the negligent performance of such an undertaking, had such an undertaking existed, actionable under Section 324A. The evidence supports neither the contention that Bechtel's actions increased the likelihood of harm to Gilbert and Trosclair as required by Section 324A(a), nor the assertion that Bechtel undertook to perform the duty owed by Ranney to its employees to take safety measures as described in Section 324A(b). *Tillman v. Travelers Indemnity Co.*, 506 F.2d at 921.

■ The plaintiffs contend that they relied on Bechtel's performance of the safety function, as did their employer Ranney. To impose liability under Section 324A(c), there must be proof of actual reliance on a contractual undertaking or representations by the defendant that resulted in acts or omissions by the party relying on the defendant's undertaking. *Stacy v. Aetna Casualty & Surety Co.*, 484 F.2d at 295; *Tillman v. Travelers Indemnity Co.*, 506 F.2d at 921. Here, as in *Stacy*, there is no evidence that either Ranney or its employees, Gilbert and Trosclair, relied upon Bechtel's action in regard to safety measures, thus causing Ranney or its employees to neglect to take safety precautions of their own. Therefore, there was no evidence to satisfy the plaintiffs' burden of proof as to the existence of an undertaking by Bechtel to perform the safety function or as to any of the three conditions that must accompany such an undertaking to state a claim under Section 324A.

The directed verdict is lethal. It is not to be utilized with either a light heart or a heavy hand. It may be properly utilized to cut off a party's life-support line to the jury only when reasonable persons in the exercise of impartial judgment could reach but one verdict. *See Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 958 (5th Cir. 1979), *modified on rehearing*, 609 F.2d 820 (5th Cir. 1980). *See generally* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2524 (1971). When, however, the evidence can reasonably point to no other conclusion, the directed verdict is both economical and protective, conserv-

ing trial time and protecting neutral principles of law from erosion. *Rutherford v. Illinois Central R. R.*, 278 F.2d 310, 312 (5th Cir.), *cert. denied*, 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261 (1960). *See Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 116 (3d Cir. 1980).

For the reasons stated, the judgment is AFFIRMED.