Frank A. **RICCI** and Rose Mary Ricci, his wife, Plaintiffs,

v.

**QUALITY BAKERS OF AMERICA COOPERATIVE INC.,** Defendant.

Civ. A. No. 80–417.

United States District Court, D. Delaware.

Feb. 10, 1983.

Arthur Inden and Sydney R. Chirlin, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Robert G. Carey, Prickett, Jones, Elliott, Kirstol & Schnee, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Defendant's summary judgment motion in this diversity case concerns the existence and scope of the duty under the law of the State of Delaware to an employee by a third party who allegedly undertook safety inspections of the employer's plant. For reasons which follow, it is held on the facts of this case as established of record that plaintiff failed to establish defendant owed plaintiff any duty, the breach of which would cause Quality Bakers to be liable to plaintiff.

Plaintiff, Frank Ricci, a forty-year employee of Schmidt Baking Co., Inc. ("employer" or "Schmidt"), fell while running toward jammed lids on a recently installed bakery pan lid conveyor system. He alleges that the failure of the lid conveyor to operate properly proximately caused him to fall with serious injury to his elbow.[1]

The only defendant, Quality Bakers of America Cooperative, Inc. ("Quality Bakers"), has no employer-employee relationship with plaintiff.[2] Quality Bakers is a cooperative providing engineering, maintenance, and production services only at the request of a member baker.[3] Schmidt, a member with five plants, was entitled to a set number of consultant days per year divided among the plants as determined by Schmidt. Under the "Membership and Patronage Agreement" (Doc. 57, Ex. B), between Quality Bakers and Schmidt, defendant undertook, *inter alia*, "[T]o render production and efficiency service, to advise in general on bakery layout, design and construction (and) [T]o advise on equipment." (Doc. 57, Ex. B, p. 1). Nowhere in the contract documents is there an undertaking by Quality Bakers to make safety inspections for Schmidt. In fact, under the contract documents, with one exception not important here, Schmidt could control the location and focus of Quality Bakers consulting services. However, the documentary[4] and deposition record[5] demonstrates

---

1. From the deposition of plaintiff, it appears that if the lids jammed too long, the bread inside the oven would burn. (Doc. 15). Plaintiff claims that the need to feed bread into the oven and at the same time to prevent jamming caused him to rush from one position to another, hurry and, consequently, fall.

2. Presumably, plaintiff cannot sue his employer, Schmidt Baking Co., Inc. *See* 19 *Del.C.* § 2304. He has received payments under the Delaware Workmen's Compensation statute. Doc. 15, pp. 42–43.

3. In addition, a member bakery had to accept sanitation service.

4. Doc. 57, App. C, p. 3. A November 16, 1979 report of the defendant addressed to Schmidt states: "The ... Bread mixer runs in high gear with the doors down and no one touching the operating panel. Evidently the door safetys are

that defendant in the discharge of its duties had some involvement with safety.

On matters other than the duration and intensity of the jamming problem with the lid conveyor system,[6] the parties are in remarkable agreement. Defendant, through its production consultant, Orville Windholz, suggested Schmidt consider installing some type of lid return conveyor system to reduce labor costs. Such systems are well known in the bakery industry. While Schmidt originally undertook design of the system in house, it ultimately chose to install a surplus conveyor system from another Schmidt plant. The time lapse between the recommendation of defendant and its implementation by Schmidt is unknown. It is clear, however, that defendant only made a recommendation and nothing more. Defendant made no drawings, designs, sketches or suggestions as to type of system or whether the same should be fabricated or bought. In fact, all design, fabrication, installation and maintenance of the lid conveyor system was done by Schmidt. While the record is unclear as to whether defendant knew of the jamming problem with the lid return conveyor system, all agree it was the type of problem which defendant would have given advice had it been asked or had it occurred when its representatives walked through the Schmidt plant, making observations as part of its proffered service.

Assuming the jamming condition came to the attention of defendant, it is undisputed that it could only make suggestions and recommendations. Whether defendant's advice, if any, was followed, was solely up to Schmidt. In like vein, Schmidt was solely responsible for maintenance and proper functioning of equipment. This responsibility had not been delegated to the defendant.[7]

inoperable. This is a very dangerous condition as discussed." See also, *id.,* App. D, p. 1, an August 5, 1980 production report lamenting: "The safetys on the mixers are still inoperable; i.e., mixers run with the door down without any benefit of an operator. This is an extremely dangerous situation."

5. Robert C. Anderson, Director of Engineering of defendant testified on deposition:

Q. You had an ongoing duty in your mind to see the efficiency and safety of machinery in their plant.
A. Yes.
Q. And that was one of the obligations you undertook as the consulting engineering arm of QBA towards each of your member companies?
A. Yes.
Q. And how would you fulfill that ongoing obligation? Would you make inspections periodically and see the process in operation periodically?
A. Yes.
Q. And would you also discuss periodically with the local plant, customer plant engineering people, what was happening in the operation of the plant to get some feedback on what was going on and to give the benefit of your expertise to the local plant engineer?
A. Yes.
Q. And this was part of your ongoing obligations, I take it.
A. Yes.
(Anderson depos. Doc. 27, pp. 18–19).

6. Plaintiff claims jamming occurred ten to twenty times every day with as few as ten lids and as many as fifty involved in any one jam. Ricci depos. pp. 16–17, 21–22. Hammersmith, Plant Manager for Schmidt, stated the jamming problem was of short duration in the nature of a week. Hammersmith depos. pp. 45–49.

7. Plaintiff's allegation contained in paragraph 9(a) of the Complaint (Doc. 1) that the defendant "designed, installed and maintained" the conveyor system was withdrawn. Plaintiff's Answer to Interrogatory No. 27 (Doc. 51) sets out the revised theory:

The record shows that Quality Bakers of America had a duty to Schmidt's [sic] Bakery to provide services which included the efficiency and safety of machinery, such as the lid conveyor system. The record shows that Quality Bakers of America in fact gave advice to Schmidt's [sic] Baking regarding the efficiency and safety of various machinery.

The record shows that Quality Bakers of America's employee Orville Windholz recommended installation of the lid conveyor system. Also, the record shows that the jamming of lids was a continuous and recurring problem prior to the plaintiff's accident.

The lid jamming problem with the lid conveyor system proximately caused plaintiff's accident. This was the type of production efficiency problem which was or should have been observed by Quality Bakers of America employees, including Mr. Windholz, during their visits to Schmidt's [sic] Bakery; and Quality Bakers of America employees had a duty to warn of the dangers and give advice regarding the lid conveyor system.

In analyzing whether this lawsuit should be permitted to continue, the procedural posture must be kept in mind. "Rule 56 allows the trial court to grant summary judgment if it determines from its examination of the allegations in the pleading and any other evidential source available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law. The purpose of the rule is to eliminate a trial in cases where it is unnecessary and would only cause delay and expense.... Inferences to be drawn from the underlying facts contained in the evidential sources ... must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The parties have sharply focused the issue on defendant's motion for summary judgment. Simply put, the issue is whether under the facts of this case, defendant may be held liable to plaintiff under Delaware state substantive law by reason of Quality Bakers' alleged obligation to inspect the lid conveyor system.[8] Quality Bakers takes the position it did not undertake to inspect the conveyor system and did not know it was malfunctioning. But, the record fairly read also raises an inference that defendant did inspect or at least should have inspected so as to ascertain the cause of the jamming of the return lid conveyor system. Therefore, in order to prevail on summary judgment, defendant must demonstrate its entitlement to summary judgment under two sets of circumstances, inspection performed in a negligent manner and, alternatively, failure to inspect at all.

Since diversity is the sole basis for jurisdiction, choice of law is controlled by the law which would be applied by a court in the State of Delaware. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The Delaware courts have long taken the position that tort actions are governed by the law of the place where the tort occurred. *Friday v. Smoot*, 211 A.2d 594, 595 (Del.1965); *Tew v. Sun Oil Co.*, 407 A.2d 240, 242 (Del.Super.Ct.1979). In this case the injury occurred in Delaware and Delaware substantive law controls.[9]

Plaintiff urges that the issue of the liability of Quality Bakers for his injuries is governed by the *Restatement (Second) of Torts* § 324A (1965), which states that:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

While section 324A has not been expressly adopted by the Delaware Supreme Court, it has been cited with approval in at least one instance by a Delaware Superior Court. *Rabar v. E.I. duPont de Nemours & Co., Inc.*, 415 A.2d 499, 505 (Del.Super.Ct.1980). It will be assumed that if confronted with the question, the Delaware Supreme Court

---

**8.** Defendant in its brief (Doc. 55, pp. 26–27) apparently attempts to make arguments excusing breach of the alleged duty to inspect and warn including some elements of superseding cause, assumption of risk and contributory negligence. The Court agrees with plaintiff that the contours of these arguments, if not the record, are too ill defined for resolution by way of summary judgment even keeping in mind that plaintiff was not injured by the conveyor lid return system, but when, for inexplicable reasons, he fell while running toward the conveyor to unjam lids.

**9.** The result would be the same under *Restatement (Second) Conflict of Laws* § 145 (1971).

would incorporate this principle of tort law into the substantive law of Delaware. The question then becomes whether under any of the three alternatives of section 324A there is a material issue of fact which would preclude grant of summary judgment to Quality Bakers.

For purposes of this summary judgment motion, it is assumed that the defendant undertook to inspect the Schmidt plant and that the defendant should have recognized this inspection as necessary for the protection of the plaintiff. In order to defeat the defendant's motion for summary judgment, the plaintiff must establish the defendant's duty under one of the three alternative elements of section 324A.[10]

■ Plaintiff urges that defendant's failure to inspect or to exercise reasonable care in carrying out the inspection increased the risk of harm to plaintiff within the meaning of subpart (a) of section 324A. However, the only increased risk which plaintiff could point to was an argument to the effect that when a level of risk such as a jamming conveyor system remains constant, it increased the risk of injury to plaintiff over time. Plaintiff's search for "increased risk" misses the point. The risk to plaintiff allegedly stems from the fact that the lid return conveyor system jammed. There is absolutely nothing in the record which would suggest that defendant altered or recommended any alteration to the conveyor system which in any way increased the risk to plaintiff. The hazard, if any, which caused plaintiff's injury existed independently of any inspection, negligent inspection, omission to inspect, or recommendation of Quality Bakers. In short, Quality Bakers' alleged negligence did not increase the risk of harm to plaintiff within the meaning of section 324A(a). *See Hassan v. Hartford Insurance Group,* 373 F.Supp. 1385, 1391 (D.Del.1974) (defendant did not increase risk of harm where evidence failed to show that defendant directed or altered operations). At best, defendant's alleged conduct merely "permitted the continuation of an existing risk," an inadequate basis upon which to impose liability under section 324A(a). *See Raymer v. United States,* 660 F.2d 1136, 1143 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *United Scottish Insurance Company v. United States,* 614 F.2d 188, 194 (9th Cir.1980); *Zabala Clemente v. United States,* 567 F.2d 1140, 1145 (1st Cir.1978); *Davis v. Liberty Mutual Insurance Company,* 525 F.2d 1204, 1207 (5th Cir.1976). Plaintiff's critical defect is his inability to identify "sins of commission rather than omission. . . . Moreover, the comment[11] to section 324A(a) makes clear that 'increased risk' means some physical change to the environment or some other material alteration of circumstances." *Patentas v. United States,* 687 F.2d 707, 717 (3d Cir.1982). It is concluded that the failure of Quality Bakers to inspect, or its conduct of an inspection in a negligent manner, did not increase the risk of harm to plaintiff within the meaning of section 324A(a).

■ In order to prevail under subpart (b) of section 324A, plaintiff must demonstrate of record that Quality Bakers undertook a duty owed by Schmidt to plaintiff. In purported discharge of his burden, plaintiff asserts Quality Bakers undertook Schmidt's legal obligation under Delaware law of providing plaintiff with a safe place to work. Assuming such an obligation exists under Delaware law, the fatal flaw in plaintiff's position is that the record is barren of any

---

**10.** Courts and commentators have construed the provisional requirements of section 324A to state the requirements of the scope of a third party's duty to others or to state the requirements of proximate cause. *See Blessing v. United States,* 447 F.Supp. 1160, 1193 n. 51 (E.D.Pa.1978) (proximate cause); *DeJesus v. Liberty Mutual Ins. Co.,* 423 Pa. 198, 223 A.2d 849 (Pa.1966) (per curiam) (proximate cause); *Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir.), *cert. denied,* 435 U.S. 1006, 98

S.Ct. 1876, 56 L.Ed.2d 388 (1978) (duty to others). *See generally* 100 A.L.R.2d 942. Since the parties have construed section 324A as creating a duty, the Court will treat section 324A in like manner, although the result would be the same if the provisional requirements of section 324A were analyzed in terms of proximate cause.

**11.** Comment a.

evidence which remotely suggests Schmidt delegated to Quality Bakers any portion of its duty to maintain a safe workplace. In fact, everything in the record is to the contrary. The contract documents and all other documents of record indicate that Quality Bakers could at most make recommendations upon request which Schmidt was free to accept or reject. Defendant could presumably recommend with respect to aiding Schmidt in discharge of its own duty to provide a safe workplace, but only Schmidt could implement safety suggestions. In order to prevail under section 324A(b), a plaintiff must establish that the one who undertook a duty to inspect supplanted and not merely supplemented another's duty to inspect. *Blessing v. United States,* 447 F.Supp. 1160, 1194–95 (E.D.Pa. 1978); *accord Trosclair v. Bechtel Corporation,* 653 F.2d 162, 165 (5th Cir.1981); *see Davis v. Liberty Mutual Insurance Company,* 525 F.2d at 1207–08; *Tillman v. Travelers Indemnity Co.,* 506 F.2d 917, 921 (5th Cir.1975);[12] *Contra United States Fidelity & Guaranty Co. v. Jones,* 356 So.2d 596, 598 (Ala.1978) (employer need not fully delegate duty to third party in order for third party to be liable under 324A(b)). There has been a failure to demonstrate Quality Bakers undertook to perform a duty owing by Schmidt to plaintiff within the meaning of section 324A(b).

■ At oral argument plaintiff conceded there was no record evidence to support any argument that plaintiff's injury occurred because of plaintiff's reliance on Quality Bakers' inspection within the meaning of subpart (c) of section 324A. The parties did not address the issue of the reliance of Schmidt, the plaintiff's employer, upon the defendant. To establish reliance under section 324A(c) the plaintiff must show that Schmidt's reliance on the defendant's inspection induced Schmidt to "forgo other remedies or precautions against such a risk." *See Restatement (Second) of Torts*

§ 324A comment e. The plaintiff has not presented any facts indicating that Schmidt relied upon the defendant's inspection and in doing so forewent other remedies or precautions against the risk of harm to the plaintiff.

■ The record indicates that Schmidt continued to make its own inspections.[13] While it is true that if a representative from Quality Bakers saw a problem, such as the jamming of the lid conveyor, he would recommend that something be done, it cannot be said that Schmidt relied upon the defendant to bring this type of information to them. Defendant's activities can only be characterized as supplementing Schmidt's own procedures for maintenance of equipment similar to the conveyor.

> To impose liability under Section 324A(c), there must be proof of actual reliance on a contractual undertaking or representations by the defendant that resulted in acts or omissions by the party relying on the defendant's undertaking. *Stacy v. Aetna Casualty & Surety Co.,* 484 F.2d 289, 295 (5th Cir.1973).

*Trosclair v. Bechtel Corp.,* 653 F.2d at 165. Schmidt could not have relied upon any inspection of Quality Bakers because there is no evidence that Quality Bakers made any inspection of or report on the lid conveyor system other than the initial recommendation of Windholz to install such a system. The record indicates that Schmidt was aware of the jamming problem at the time of the plaintiff's accident. Nothing in the record indicates that Schmidt relied upon the defendant to solve the jamming problem.[14] Schmidt did not forego remedies or precautions against the risk of harm to the plaintiff.

Subsection (c) addresses the consequences of what the defendant undertook to do. The subsection focuses on whether Quality Bakers induced reliance. *Blessing v. United States,* 447 F.Supp. at 1197 & n. 53.

---

**12.** *See Restatement (Second) of Torts* § 324A comment d.

**13.** Hammersmith depos. Doc. 40, pp. 28, 33, 44–45, 80–83.

**14.** Ricci depos. Doc. 15, p. 46; Bove depos. Doc. 27, p. 10; Hammersmith depos. Doc. 40, pp. 44–50.

Nothing in the record indicates that Quality Bakers' actions induced such reliance on the part of Schmidt. Therefore, the plaintiff cannot establish the defendant's liability under section 324A(c). *See Patentas v. United States,* 687 F.2d at 717; *Davis v. Liberty Mutual Insurance Co.,* 525 F.2d at 1208; *Tillman v. Travelers Indemnity Co.,* 506 F.2d at 921.

Viewing the facts most favorably to the plaintiff, the plaintiff has failed to establish defendant's liability under section 324A. Having found there is no material issue of fact and having held plaintiff failed to show as a matter of law any duty of Quality Bakers owing to plaintiff under any of the subparts of section 324A, defendant is entitled to entry of summary judgment in its favor and against plaintiff.[15]

An appropriate order will issue.

---

**15.** At oral argument plaintiff claimed to rely solely upon section 324A to establish the liability of the defendant. As stated above, plaintiff has failed to establish the defendant's liability under section 324A. In his brief, plaintiff cited cases setting forth a common law claim for negligent inspection by a third party. *Staffney v. Fireman's Fund Ins. Co.,* 91 Mich.App. 745, 284 N.W.2d 277 (Mich.App.1979), *vacated as to insurance carriers,* 308 N.W.2d 102 (Mich. 1981). *See Waugh v. Michigan Millers Mutual Ins. Co.,* 410 Mich. 685, 303 N.W.2d 702 (Mich. 1981) (holding that inspection conducted by fire insurance carrier does not render carrier liable to third parties if done only for benefit of carrier); *United States Fidelity & Guaranty Co. v. Jones,* 356 So.2d 596 (Ala.1978); *Cline v. Avery Abrasives, Inc.,* 96 Misc.2d 258, 409 N.Y. S.2d 91 (Sup.Ct.1978); *Sims v. American Casualty Co.,* 131 Ga.App. 461, 206 S.E.2d 121 (Ga. Ct.App.), *aff'd,* 232 Ga. 787, 209 S.E.2d 61 (Ga. 1974); *Corson v. Liberty Mutual Ins. Co.,* 110 N.H. 210, 265 A.2d 315 (N.H.1970); *Nelson v.*

*Union Wire Rope Corp.,* 31 Ill.2d 69, 199 N.E.2d 769 (Ill.1964). All of these cases involved inspections undertaken, gratuitously or under contractual obligation, by insurers of a plaintiff's employer. Generally, the cases held that where a third party undertakes to inspect and does so negligently he is liable to any foreseeable plaintiff for any injuries proximately caused by the alleged negligent inspection.

Plaintiff stated at oral argument that section 324A governs and plaintiff has not set forth any argument that a Delaware court would recognize a theory of recovery broader than section 324A. *See Blessing v. United States,* 447 F.Supp. at 1197–99 (discussing viability of common law theory after adoption of section 324A). Finally, it is far from clear that a Delaware court would recognize plaintiff's common law theory in this case since it does not involve an insurance company making periodic safety inspections, whether gratuitously or not, with the avowed purpose of reducing injury claims of an insured's employees.