**Theresa SHIPE, et al., Plaintiffs,**

v.

**CHESAPEAKE BAY FISHING PARTIES, INC., et al., Defendants.**

**Civil No. AW 95–2023.**

United States District Court, D. Maryland.

Oct. 10, 1996.

Paul D. Bekman, Israelson, Salsbury, Clements and Bekman, Baltimore, MD, Kevin J. McCarthy, Lanham, MD, Philip H. Dorsey, III, Leonardtown, MD, for Theresa Shipe, Betty Phillips, Loretta Sanguinette, Robert Van Swaringen, Tama Falk, Anthony Mills, Kathleen Auman.

Kevin J. McCarthy, Lanham, MD, for Edgar C. Phillips, Gary Sanguinette, Catherine Van Swaringen, Walter S. Auman, Richard B. Williams, Julius Whitman, Virgil L. Martin, Sunil Kim, Deborah Smith, Rosalyn Jean Fierson, Raymond Smith.

Kevin J. McCarthy, Lanham, MD, Gerald I. Holtz, Saladoff & Holtz, PC, Chevy Chase, MD, for Martha Williams, Doris Whitman, Olytha Martin.

Kevin J. McCarthy, Lanham, MD, Robert W. Katz, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for Noh Gwak, Duk Sook Kim.

Kevin J. McCarthy, Lanham, MD, Ronald A. Karp, Chaikin & Karp, P.C., Bethesda, MD, for Willie Floyd.

Kevin J. McCarthy, Lanham, MD, Thomas H. Tate, New Market, MD, for Horace I. Smith, Jr., Tiffiney Smith.

Kevin J. McCarthy, Lanham, MD, Ferguson Evans, Seals, Jones, Wilson, Garrow &

Evans, LLP, Washington, DC, for Joyce Smith.

J. Paul Mullen, Kathryn Miller Goldman, Lord and Whip, P.A., Baltimore, MD, for Chesapeake Bay Fishing Parties, Inc., Joseph C. Lore, II, Clayton Lore, Anna Mae Lore.

Allen F. Loucks, Office of the United States Attorney, Baltimore, MD, Debra J. Kossow, U.S. Department of Justice, Civil Div., Washington, DC, Lynne A. Battaglia, Office of the United States Attorney, Baltimore, MD, Frank Hunger, U.S. Department of Justice, Washington, DC, Mike Devine, U.S. Coast Guard, Claims & Litigation Division, Washington, DC, Robert Birthisel, U.S. Dept. of Justice, Washington, DC, for U.S.

John Thomas Ward, Quinn, Ward & Kershaw, Baltimore, MD, for Kim McCartney, Insurance Company of North America.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently before the Court is the Motion for Summary Judgment filed by Defendants Kim I. McCartney and Insurance Company of North America (INA). A hearing on this matter was held on October 4, 1996. For the following reasons, the Court will deny the motion. Also before the Court is the United States Motion to Dismiss Portions of 35 Counts of the Complaint for Lack of Subject Matter Jurisdiction. Plaintiffs have considered the United States' Motion, and do not oppose it. Consequently, the Court will grant the Motion of the United States with respect to counts in the Complaint addressing inspection negligence (totaling 36 counts) as well as any other counts (including cross-claims) addressing inspection negligence. Because the United States' Motion is unopposed, the remainder of this Memorandum will be devoted to discussing the Court's reasons for denying the opposed Summary Judgment Motion of Defendants McCartney and INA.

### Background

On December 5, 1993, the EL TORO II sank in the Chesapeake Bay at the mouth of the Potomac River, killing three people and injuring numerous others. Plaintiffs in this action are the injured parties and representatives of the decedents. Defendants are the owners/operators of the ship (Chesapeake Bay Fishing Parties, Inc. and members of the Lore family), the United States of America (on behalf of the Coast Guard), the Insurance Company of North America ("INA"), and Kim McCartney (INA's inspector who surveyed the EL TORO II a week before the accident) Plaintiffs have brought this action under general maritime law, the Jones Act, the Suits in Admiralty Act, and the Public Vessels Act.

The Defendants seeking summary judgment in the immediate action are INA and Kim McCartney. Plaintiffs have alleged that these Defendants are liable for negligence for their failure to take action following their inspection of the boat a week before the accident. The inspection revealed that the boat was in extremely poor condition, and inspector Kim McCartney reported in an internal INA memorandum that "This may be the worst Coast Guard inspected boat I have seen. In its current condition, I do not consider it suitable for operation or carriage of passengers." Recommendation and Narrative Report dated November 29, 1993, submitted as Exhibit 21 of Plaintiff's Opposition to Summary Judgment. Yet neither McCartney nor INA notified the Lores of these findings. Plaintiffs contend that these Defendants thereby breached a duty to take action on that information.

### Summary Judgment Principles

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). *See also Bland v.*

*Norfolk and Southern Railroad Co.*, 406 F.2d 863, 866 (4th Cir.1969).

In determining whether genuine and material factual disputes exist, resolution of which requires trial, the Court has reviewed the parties' respective memoranda and the exhibits attached thereto, and has considered the arguments offered by the parties at the hearing. In so doing, the Court has construed all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Defendant. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to this case, the Court concludes that summary judgment for Defendants must be denied.

## Discussion

### Tort Liability for Negligence

■ Defendants claim that under basic tort law as well as the Good Samaritan Doctrine, they are entitled to summary judgment as a matter of law. Basic tort liability for negligence consists of three elements: (1) a duty or obligation which the defendant is under to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff resulting from the breach. *Willow Tree Learning Center, Inc. v. Prince George's County, Md.*, 85 Md.App. 508, 512, 584 A.2d 157 (1991). As is held in several of the cases cited by Defendant, if there is no duty by a defendant to a plaintiff, the defendant cannot be found liable for negligence. The question of whether a duty is present hinges on the particular circumstances of a case, as the presence of a duty depends on the relationship between the parties. Defendants point out that in the Maryland case *Ashburn v. Anne Arundel County*, the Court stated that "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists between the actor and the third person or between the actor and the person injured." 306 Md. 617, 627–28, 510 A.2d 1078.

■ However, although Defendants assert that they had no such "special relationship" with the insured and thus owed Plaintiffs no such duty, there is clearly some factual dispute as to whether that is true. Plaintiffs assert that INA and its representatives have consistently recognized that they owed a duty to the insured to notify them of the recommendations of INA's survey. In support of their position, Plaintiffs point to Bulletin 92–7, which states that the *"minimum* requirements for LCS involvement" were "to ensure that LCS survey recommendations are communicated to the agent or broker (MCG) or to the Assured (MHA) and that compliance with required recommendation(s) is confirmed." (cited in Plaintiffs' Opposition, p. 21). Likewise, Plaintiffs point to testimony of Defendants' agents stating that when a vessel has problems as severe as the EL TORO II had upon inspection, its owner should be notified immediately as to the vessel's condition. (Deposition of Lewis, p. 65, Deposition of Atkins, p. 89–90), and that the EL TORO II should have been placed at port risk. (Deposition of Lewis, pp. 51, 63, 88). Thus, it is clear that a factual dispute exists regarding whether or not Defendants had "special relationship" with Plaintiffs that would give rise to a duty rendering them subject to tort liability for negligence.

■ Furthermore, Plaintiffs cite *Great American Insurance Company v. Bureau Veritas*, 338 F.Supp. 999 (S.D.N.Y.1972), for the proposition that "a ship's surveyor ... should be charged in law with the reasonable duty of detecting all perceptible defects of the vessel encountered during the survey and notifying the owner and/or charterer thereof." 338 F.Supp. at 1013. Under this standard, it would be possible for a reasonable fact-finder to determine that INA and McCartney were acting in the capacity of "surveyor," and that they thereby owed the Lores a duty to notify. With these factual issues unresolved as to whether INA and McCartney owed a duty to the Lores under tort law, the Court cannot grant summary judgment on this issue.

### Good Samaritan Liability

■ Defendants further argue that they are not liable under the Good Samaritan Doctrine either, as set forth in the Restatement (Second) of Torts §§ 323 and 324A.

Both sections address situations in which an individual "undertakes, gratuitously or for consideration, to render services to another." Sections 323 and 324A. Section 323 addresses liability to the individual for whom services were provided, while section 324A covers liability to third persons. The sections provide as follows:

sec. 323—*Negligent Performance of Undertaking to Render Services*

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

sec. 324A—*Liability to Third Person for Negligent Performance of Undertaking*

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Defendants first argue that they are not liable under the Good Samaritan Doctrine because they were not providing "services to another" under the terms of the Restatement provisions. In support of their position, Defendants cite numerous cases. These cases repeatedly echo the principle that whether one was providing "services to another" depends in large part on whether it is agreed or intended that the act will benefit the other or third parties. If so, then the actor was providing "services to another." However, if

the actor undertook his activity for entirely self-serving purposes, liability does not attach. *See Smith v. Allendale Mutual Ins. Co.,* 410 Mich. 685, 303 N.W.2d 702, 716–718 (1981) ("The law does not impose a duty upon an insurer who inspects in the absence of conduct evidencing an agreement or intent to benefit others by the inspection ... [T]he rule stated in sec. 324A by its terms does not apply to an actor following a self-serving course of conduct.... While an undertaking which may give rise to liability under the rule of sec. 324A may be gratuitous as well as contractual, the evidence must show that the actor assumed an obligation or intended to render services *for the benefit of another.*") Defendants cite a Fifth Circuit case taking a "similar analytic tack" (Def. Memo at 15) and issuing a directed verdict that an employer who inspected a subcontractor's work area was not liable for subcontractor's breach of safety rules absent any indication of rendering these services for the workers there. *See Trosclair v. Bechtel Corp.,* 653 F.2d 162 (5th Cir.1981). However, a reasonable fact-finder could determine that there are marked differences between *Trosclair* and the immediate case. In *Trosclair,* for example, the contractor's contract with the subcontractor required the subcontractor "to have a full-time, qualified safety representative who would have no other duties," *Trosclair* at 165. Further, there was no evidence in *Trosclair* that the contractor ever suggested that its inspections were for the subcontractor's benefit, whereas there was evidence of such suggestions in the present case, as will be discussed below.

Unlike in *Trosclair,* Plaintiffs in the immediate case have alleged sufficient facts to suggest that a reasonable fact-finder could find that Defendants had undertaken to render "services to another." Citing the "negotiations and correspondence" between the parties before the Lores contracted for insurance with INA, Plaintiffs argue that "[t]hroughout the negotiations, INA acknowledged its offer to survey the vessels of its insured was an incentive to the potential insured and would benefit the insured." (Plaintiffs' Opposition to Summary Judgment, p. 24). In particular, Plaintiffs cite INA's written assurance that "the knowl-

edge and expertise of our [surveying] staff is unmatched in the field, and further offer financial savings to the Insured." (Plaintiffs' Opposition at 24, citing October 14, 1988 letter from Wayne Atkins to William Sudduth). Plaintiffs also cite case law in which courts have found that an insurer had undertaken to provide "services to another" through its inspections, when those inspections were a selling point in describing the insurance coverage to potential customers. *See Deines v. Vermeer Manufacturing Company,* 752 F.Supp. 989, 992 (D.Kan.1990), *Brown v. Michigan Millers Mutual Insurance Company, Inc.,* 665 S.W.2d 630, 634 (Mo.1983). It is the opinion of this Court that there is at least a question of material fact as to whether Defendants in this case undertook to provide "services to another" under the circumstances present, and thus this matter is inappropriate for summary judgment.

Likewise, it remains a question of material fact whether Defendants meet at least one of the other required criteria under either of the two Restatement provisions. In order to be liable under the Good Samaritan Doctrine of sec. 323, Defendants must have either increased the risk of harm to the Lores or the harm must have been suffered because of the Lores' reliance on the Defendants. In order to encounter liability to the passengers under sec. 324A, Defendants' services must have increased the risk of harm to them, Defendants must have undertaken a duty that the Lores owed to passengers, or it must be shown that passengers' injuries were suffered because of their reliance of the Lores on Defendants' surveying activities. This Court finds that there is sufficient evidence to create a question of material fact regarding each of these factors.

First, a reasonable fact-finder could agree with Plaintiffs that Defendants actions increased the risk of harm. Plaintiffs allege that the risk of harm was increased by INA's failure to act immediately on inspector McCartney's internal INA report about the EL TORO II, that "This may be the worst Coast Guard inspected boat I have seen. In its current condition, I do not consider it suitable for operation or carriage of passen-

gers...." Recommendation and Narrative Report dated November 29, 1993, submitted as Exhibit 21 of Plaintiffs' Opposition to Summary Judgment. This failure of Defendants to act is documented, and the arguments and supporting caselaw submitted by Defendants do not persuasively refute this position that it increased the risk of harm. Consequently, this issue cannot be disposed of at the summary judgment stage.

Plaintiffs also cite caselaw indicating that in order to be liable under sec. 324A, Defendants need only be shown to have partially (not completely) undertaken to perform a duty owed by the Lores. *See Deines* at 995; *Canipe v. National Loss Control Service Corporation,* 736 F.2d 1055, 1062–3 (5th Cir. 1973). As discussed with reference to the issue of tort liability, a reasonable fact-finder clearly could find that a "special relationship" existed between the Lores and INA. The parties had entered a contract together and INA did undertake to inspect the Lores' ships. Considering these factors, a reasonable fact-finder could conclude that INA had at least partially undertaken to perform a duty owed by the Lores. Consequently, this issue cannot be resolved through summary judgment.

Finally, the question of whether the harm was caused by the Lores' reliance on INA also remains an question of material fact. Deposition testimony appears contradictory on the question of whether the Lores relied, as Joseph Lore claimed that he was not relying on Mr. McCartney to tell him whether the EL TORO II was safe for passengers (Deposition of Joseph Lore p. 118, 11.15–18), yet also stated that he would not have operated the EL TORO II if INA had informed them of Mr. McCartney's findings (Deposition of Joseph Lore, p. 80, 86–87, 112, 119). Further, Clayton Lore testified at deposition that the Lores would have expected McCartney to call if there had been severe problems with the ship (Deposition of Clayton Lore, p. 127). Given this contradictory testimony, this matter remains a question of material fact under the standard set forth in sec. 323, sec. 324A, and the relevant caselaw. Furthermore, a reasonable fact-finder might conclude that because INA had put others of the

Lores' ships at port risk (November 23, 1993 facsimile from Joe Campbell to Lois Schaeffer, submitted as Exhibit 30 of Plaintiffs' Opposition to Summary Judgment; and Deposition of Campbell at 55), the Lores might have been induced to believe that the EL TORO II also would have been placed at port risk following the inspection if it had been in poor condition. For these reasons, the question of whether the harm was caused by the Lores' reliance on INA is a question of fact, and as such it is reserved for resolution at trial.

As discussed above, there remain questions of material fact regarding whether INA and Mr. McCartney are liable to Plaintiffs under the tort rule of negligence or under the Good Samaritan Doctrine set forth in §§ 323 and 324A. Consequently, Defendants' Motion for Summary Judgment must be denied.

### ORDER

In accordance with the Memorandum Opinion, it is this 10th day of October, 1996 ORDERED:

1. That the United States' Motion to Dismiss Portions of 35 Counts of the Complaint for Lack of Subject Matter Jurisdiction BE, and the same hereby IS, with respect to all counts relating to inspection negligence (totaling 36 counts) and with respect to any other counts addressing inspection negligence, GRANTED;

2. That the Motion for Summary Judgment filed by Defendants Kim McCartney and Insurance Company of North America BE, and the same hereby IS, DENIED; and

3. That the Clerk of the Court mail copies of this Order and Memorandum Opinion to all counsel of record.