TEWANDA McCOY, a Minor, By and Through Her Mother and Next Friend, Edna Jones, Plaintiff-Appellant, v. THE CHICAGO HOUSING AUTHORITY, Defendant-Appellee.

First District (4th Division)   No. 1—01—2937

Opinion filed August 8, 2002.

Randall F. Peters & Associates, of Chicago (William A. Murphy, of counsel), for appellant.

Matthew J. Egan, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

On January 1, 1992, Tewanda McCoy (Tewanda) was five years old and resided in an apartment with her mother, Edna Jones (Jones),

and siblings in defendant Chicago Housing Authority's (CHA) building at 5041 S. Federal in Chicago, Illinois. On that date, Tewanda survived a seven-story fall to the ground from a window in the apartment. Tewanda filed suit by and through her mother and next friend, Jones, against the CHA alleging that the CHA negligently caused Tewanda's injuries. On CHA's motion, the circuit court granted summary judgment against plaintiff. 735 ILCS 5/2—1005 (West 2000). Plaintiff appeals, arguing that there is a genuine issue of fact as to whether defendant owed Tewanda a duty under a voluntary undertaking theory of liability. For the following reasons, we affirm.

Jones began leasing the apartment in question several years prior to the accident. When she moved in, she filled out a report complaining of problems in the kitchen, holes in the walls, and the absence of window screens and locks in the living room. She also had a problem opening and closing her front door for lack of a knob. She stated that at that time, a CHA employee told Jones that someone would come out to fix the apartment. Jones stated, however, that CHA workmen "only came out one time to plaster the hole in the wall and around the bathroom. That was it. They didn't come out for my windows and it was the main thing that I need, my screens and the locks." With regard to the window lock, Jones stated, "[t]hey didn't have no locks on it. They had the lock up there, but you couldn't lock it. You could put it on lock, but it still slide open. So it was broke. The lock was broke." She believed the absence of window locks constituted a dangerous condition to her children. She stated that after her initial report, she went to the building office one or more times a month to reassert her complaints. She also stated that on several occasions, a person in the CHA office told her that workmen would come out and fix the apartment. No workmen ever came to make the repairs. She did receive help from her brother, however, including an instance where he helped with a rat problem emanating from holes underneath her sink. In December 1991, Jones complained again to CHA personnel about the locks and the screens. However, the CHA told her that it would be unable to make the repairs. As Jones stated, "at the last one before my baby fell out of the window, they told me they had no more workers, they laid off some workers and nobody there to come and fix my screen and my door."

Jones submitted an affidavit stating that she "relied on the promises of CHA to fix the window locks, the screens, the door to the apartment, and such other complaints which CHA, through its employees and agents promised to fix." Plaintiff also submitted a sworn statement from Gwendolyn Hinton, a former CHA employee, who stated, "[p]rior to Jan. 1, 1992 I recall several complaints being

made requesting that window locks be repaired and or replaced. It has been too long for me to remember who has made the complaints. I would then direct the complaining party to the maintenance department. I recall making out several work orders to have this task performed prior to January 1, 1992. It was common knowledge to the staff at 5041 S. Federal that the window locks were bad."

On the afternoon of January 1, 1992, Jones was watching television with Tewanda and her daughter Gwendolyn. When her children fell asleep, she stated that she asked the neighbor next door to watch the door of her apartment, while she went downstairs to visit her mother, who also lived in the building at 5041 S. Federal. Jones said she wanted to visit her mother to make further complaints to the CHA about her apartment. Tewanda fell out of the window during Jones' absence. At her deposition, Tewanda states that she does not know how she fell out of the window. Tewanda suffered a severe injury to her left shoulder, dislocation of her right leg and hip, permanent scarring, and expected arthritis. The day after the incident, CHA workers arrived at the apartment to make repairs.

Jones later moved from the apartment. When Jones was asked at her deposition why she left, she stated, "[w]hy did I leave it? Because they wasn't doing nothing and my baby fell out the window. They wasn't coming. I had complaints down there going about them fixes the holes and the stuff in the wall, big rats coming in there and I wasn't going to take no chance of them biting my kids. They wouldn't come out there and do nothing for it."

The court granted defendant's motion for summary judgment. On appeal, plaintiff contends that the trial court erred in holding that the Chicago Housing Authority did not have a duty, as a matter of law, to prevent the injury to Tewanda by making appropriate repairs to the window.

■■ The determination of the existence of a duty is a question of law to be resolved by the court. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411, 583 N.E.2d 538, 541 (1991); *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 215, 531 N.E.2d 1358, 1364 (1988). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000). A defendant who moves for summary judgment may fulfill its initial burden of production in two ways. 4 R. Michael, Illinois Practice § 40.3, at 271-72 (1989). The first is by affirmatively showing that some element of the case must be resolved in defendant's favor. In the second method, a defendant may carry the initial burden

of production by establishing that plaintiff cannot prove an essential element of the cause of action. 4 R. Michael, Illinois Practice § 40.3, at 272 (1989). For example, in *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 583 N.E.2d 538 (1991), the supreme court found that a trial court properly granted summary judgment as a matter of law where plaintiff failed to produce evidence from which the court could infer the existence of a duty under a voluntary undertaking theory of liability. *Vesey*, 145 Ill. 2d at 422, 583 N.E.2d at 547.

■ Under the common law, a local public entity has a duty to maintain public property in a reasonably safe condition. *Vesey*, 145 Ill. 2d at 413, 583 N.E.2d at 542. Where the public entity acts as a landlord, however, courts have applied the principles of traditional landlord-tenant law. See, *e.g.*, *Vesey*, 145 Ill. 2d 404, 583 N.E.2d 538; *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 399 N.E.2d 596 (1979). Under traditional common law, where the " 'landlord retains control of a portion of the premises leased to the tenant[,] it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition.' " *Vesey*, 145 Ill. 2d at 413, 583 N.E.2d at 542, quoting *Rowe*, 125 Ill. 2d at 220-21, 531 N.E.2d at 1366. Conversely, where a defective condition exists on premises leased to a tenant and under the tenant's control, a landlord is not liable for injuries caused by the condition. *Vesey*, 145 Ill. 2d at 413, 583 N.E.2d at 542; *Rowe*, 125 Ill. 2d at 220-21, 531 N.E.2d at 1366. The landlord's liability for the leased premises is extinguished because " '[t]he lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.' " *Rowe*, 125 Ill. 2d at 221, 531 N.E.2d at 1366, quoting W. Keeton, Prosser & Keeton on Torts § 63, at 434 (5th ed. 1984).

■ Control over the premises, however, is not essential to liability where a party has voluntarily undertaken to render a service to another. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 84-85, 199 N.E.2d 769, 779 (1964). Under the voluntary undertaking theory of liability, "one who gratuitously renders services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care or ' "such competence and skill as [one] possesses." ' [Citation.]" *Vesey*, 145 Ill. 2d at 415, 583 N.E.2d at 543; *Nelson*, 31 Ill. 2d at 85-86, 199 N.E.2d at 774.

Plaintiff cites *Vesey v. Chicago Housing Authority* as authority for the proposition that Jones' reliance on the promises of the CHA to repair the apartment imposed liability on the CHA under a voluntary undertaking theory. We disagree that the application of the principles of *Vesey* imposes liability in this matter.

■ In *Vesey*, the supreme court analyzed a parallel fact situation under the formulation of voluntary undertaking set forth in section 324A of the Restatement (Second) of Torts. This section provides:

" 'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.' " *Vesey*, 145 Ill. 2d at 415-16, 583 N.E.2d at 544, quoting Restatement (Second) of Torts § 324A (1965).

The *Vesey* court noted the rationale for subsection (c) is stated in the comments to that section, which state:

" 'Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.' " *Vesey*, 145 Ill. 2d at 419, 583 N.E.2d at 545, quoting Restatement (Second) of Torts § 324A, Comment *e* (1965).

This section was applied by the *Vesey* court to determine whether the CHA had voluntarily undertaken a duty to repair a condition in an apartment that later caused an injury to a child. The court found that the plaintiff had failed to produce evidence establishing she had any expectation that the CHA would repair the apartment or that plaintiff relied on the CHA to make repairs. Thus, the court found that the CHA was not liable under the voluntary undertaking theory. *Vesey*, 145 Ill. 2d at 422, 583 N.E.2d at 547. We also find that plaintiff has failed to produce sufficient evidence of expectation or reliance to impose liability upon the CHA. *Vesey*, 145 Ill. 2d at 422, 583 N.E.2d at 547; *cf. Nelson*, 31 Ill. 2d at 85, 199 N.E.2d at 778 (rejecting defendant's argument that plaintiff was required to produce evidence of expectation or reliance where defendants negligently performed an undertaking rather than omitting to perform an undertaking).

■ We initially note that plaintiff has failed to produce any evidence that Jones expected the CHA to repair the window lock at the time of the accident. Over the course of several years, the CHA repeatedly failed to fulfill promises that it would make the repairs. A month prior to the incident, CHA personnel specifically told Jones that the CHA would not make repairs to the apartment because it lacked manpower. Most significantly, Jones' statement that she was

still attempting to call the CHA to fix the problems on the date the accident occurred indicates that she did not expect the CHA to fulfill its earlier retracted promise. Thus, Jones' affidavit and deposition testimony provides no evidence from which to infer that she possessed an expectation that the CHA would repair her window locks at the time of the accident.

Illinois courts have not yet specifically ruled on the requirements of proof of reliance under section 324A(c) of the Restatement. However, federal courts have held that to impose liability under section 324A(c), there must be proof of actual reliance on a contractual undertaking or representations by the defendant that resulted in acts or omissions by the party relying on the defendant's undertaking. *Smith v. Universal Underwriters Insurance Co.*, 732 F.2d 129, 131 (11th Cir. 1984); *Trosclair v. Bechtel Corp.*, 653 F.2d 162, 165 (5th Cir. 1981); *Deines v. Vermeer Manufacturing Co.*, 752 F. Supp. 989 (D. Kan. 1990). Additionally, our supreme court in *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 85 (1964), favorably cited *United States v. DeVane*, 306 F.2d 183 (5th Cir. 1962), when it discussed proof required when a defendant failed to perform a voluntary undertaking. The *DeVane* court stated that to succeed on a claim for failure to perform a voluntary undertaking, a plaintiff must provide evidence that defendant worsened the position of a plaintiff before liability will be imposed. *Devane*, 306 F.2d at 187. In that case, there was evidence that plaintiff did not avail herself of other remedies because of defendant's representations that defendant would remedy plaintiff's problem. *Devane*, 306 F.2d at 187.

Here, plaintiff has submitted no evidence to support an inference of reliance within subsection (c) and comment *e* of the Restatement § 324A. Restatement (Second) of Torts § 324A, Comment *e* (1965). Plaintiff has not presented to the court a lease or other written agreement whereby the CHA contracted to provide repairs for Jones. Rather, plaintiff cites only Jones' affidavit, which states the conclusion that she "relied on the promises of CHA to fix the window locks, the screens, the door to the apartment, and such other complaints which CHA, through its employees and agents promised to fix." Without more to support the theory of reliance, this bare assertion is insufficient to survive summary judgment.

The assertion provides no evidence that the CHA induced Jones "to forgo other remedies or precautions against" the risk of someone falling out the window. Restatement (Second) of Torts § 324A, Comment *e* (1965). The affidavit is devoid of any suggestion that CHA's promise induced Jones to forgo other remedies such as fixing the window lock herself, asking her brother or another person to fix it, pursuing legal action, or seeking other housing. Alternatively, she does

not state she was forced to rely on the CHA's promise because lack of time, skill, or resources foreclosed her from pursuing these or other potential remedies. Jones' deposition similarly lacks evidence of reliance. Therefore, there is no basis from which the court can infer that Jones relied on the CHA to establish liability under *Vesey*.

Plaintiff additionally relies on *Jones v. Chicago Housing Authority*, 59 Ill. App. 3d 138, 376 N.E.2d 26 (1978). In *Jones*, the court noted that where the evidence showed that the CHA followed a consistent practice of making repairs on behalf of tenants at their request, the CHA "may establish a duty to properly maintain the premises in which plaintiff resided." 59 Ill. App. 3d at 140, 376 N.E.2d at 28. Here, the testimony of Jones and the affidavit of Gwendolyn Hinton provide no evidence that the CHA followed a pattern of making repairs to premises of tenants upon the tenant's request. Rather, the evidence overwhelmingly shows that the CHA failed to make any practice of making repairs to Jones' apartment as the record reveals that CHA workmen came only once during Jones' tenancy to repair holes in the walls. Further, although Hinton states she would commonly take requests for repairs from the CHA, no evidence was provided as to whether those repairs were ever actually performed. Thus, there is no basis from which a court can infer that the CHA had made a practice of making repairs.

Because plaintiff has failed to produce evidence from which an inference of the existence of a duty by CHA can be drawn, we find that the trial court properly granted defendant's motion for summary judgment.

Affirmed.

HOFFMAN, P.J., and HARTMAN, J., concur.